Scott McKay (ISB#4309)
Nathan Pittman (ISB#9430)
**NEVIN, BENJAMIN & MCKAY LLP**
303 W. Bannock
Boise, ID 83702
Telephone:  (208) 343-1000
Facsimile:  (208) 345-8274
smckay@nbmlaw.com
npittman@nbmlaw.com

*Counsel for Plaintiff*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| CLEVELAND BAKERS AND TEAMSTERS PENSION FUND, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LAMB WESTON HOLDINGS, INC., THOMAS P. WERNER, and BERNADETTE M. MADARIETA, <br><br> Defendants. | Case No.   24-CV-282 <br><br> <u>CLASS ACTION</u> <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Cleveland Bakers and Teamsters Pension Fund ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (a) regulatory filings made by Lamb Weston Holdings, Inc. ("Lamb Weston" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases, presentations, and media reports issued by and disseminated by the Company; (c) analyst and media reports concerning Lamb Weston; and (d) other public information regarding the Company.

## **INTRODUCTION**

1.     This securities class action is brought on behalf of all persons or entities that purchased shares of Lamb Weston common stock between July 25, 2023, and April 3, 2024, inclusive (the "Class Period"). The claims asserted herein are alleged against Lamb Weston and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2.     Lamb Weston is a large producer of frozen potato products, which the Company sells to restaurants and retailers around the world. Lamb Weston counts fast-food chain, McDonald's, as one of its largest customers.

3.     On July 25, 2023, Lamb Weston announced the completion of the design of a new Enterprise Resource Planning ("ERP") software system that the Company would work to implement across its operations. The new ERP system was critically important to Lamb Weston. The system would interface with the most important aspects of Lamb Weston's business and operations, including, among other things, inventories and customer order shipments. According to the Company, the ERP system would drive efficiency through increased automation. In late

November 2023, the Company transitioned some of its previous financial and operating systems to the new ERP system.

4.      The claims against Defendants arise from their misrepresentations and omissions regarding the Company's design and implementation of its new ERP system.  Throughout the Class Period, Lamb Weston emphasized that, through the design of the Company's new ERP system, Lamb Weston had "strengthen[ed] [its] operational infrastructure."  The Company also claimed that it had experienced only the "usual bumps" in the implementation of the system, and told investors that its guidance for fiscal 2024 accounted for the financial impact of the system's deployment.

5.      These and similar statements made throughout the Class Period were false.  In truth, Defendants knew of, or recklessly disregarded, significant problems in the functionality of the new ERP system that would impact its successful implementation.  Notwithstanding those problems, Lamb Weston proceeded with the implementation, knowing that a premature launch would negatively impact its business and operations.  As a result, the Company's statements concerning its business, operations, and prospects, including its financial guidance for fiscal 2024, lacked a reasonable factual basis.  As a result of Defendants' misrepresentations, shares of Lamb Weston common stock traded at artificially inflated prices during the Class Period.

6.      The truth emerged on April 4, 2024, when Lamb Weston disclosed that it experienced significant challenges in its transition to the new ERP system.  The disastrous roll-out caused the Company to lose $135 million in sales during the third quarter of fiscal 2024, and necessitated a $330 million reduction to its sales guidance for the full fiscal year.  As a result of these disclosures, the price of Lamb Weston stock declined by $19.59 per share, or over 19%.

7.     As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of Lamb Weston stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  Lamb Weston maintains its headquarters in Eagle, Idaho, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District.  In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

**A.     Plaintiff**

10.     Plaintiff Cleveland Bakers and Teamsters Pension Fund is a multiemployer defined benefit Taft-Hartley pension fund whose members' participation is based upon a Collective Bargaining Agreement between their employer and either Bakers' Union Local No. 19 or Teamsters Local Union No. 507.  As indicated on the certification submitted herewith, Plaintiff purchased Lamb Weston common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

**B.      Defendants**

11.      Defendant Lamb Weston is a food processing company, and one of the world's largest producers of frozen potato products.  The Company's principal executive offices are located at 599 South Rivershore Lane, Eagle, Idaho.  Lamb Weston common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "LW."  As of March 28, 2024, Lamb Weston had over 144 million shares of common stock outstanding, owned by hundreds or thousands of investors.

12.      Defendant Thomas P. Werner ("Werner") is, and was at all relevant times, President and Chief Executive Officer ("CEO") of Lamb Weston and a member of the Company's board of directors.

13.      Defendant Bernadette M. Madarieta ("Madarieta") is, and was at all relevant times, Chief Financial Officer ("CFO") of Lamb Weston.

14.      Defendants Werner and Madarieta are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with Lamb Weston, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## BACKGROUND

15.     In July 2023, Lamb Weston announced that it had completed the design phase of its new ERP software system that would manage and integrate the most important parts of the Company's business.  The new system was critical to Lamb Weston's operations, as it was designed to manage supplier payments, inventories, warehousing, customer invoicing, and order shipments.  The new ERP system would replace Lamb Weston's antiquated operating and financial systems, which the Company's CFO acknowledged suffered from Lamb Weston's "decades of under-spending in IT."

16.     The ERP project tied into the Company's Win-as-One initiative to provide, among other things, better data systems that purportedly would drive increased productivity and cost savings for Lamb Weston as well as the Company's more efficient operational execution.  In late November 2023, Lamb Weston transitioned some of its central systems to the new ERP infrastructure.

### DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

17.     The Class Period begins on July 25, 2023, when the Company issued a press release announcing its financial results for its fiscal fourth quarter and full year 2023.[1]  In the press release, which was also filed with the SEC on Form 8-K, Lamb Weston emphasized its "capital investments to upgrade its information systems and ERP infrastructure."  Lamb Weston also issued financial guidance for fiscal 2024, telling investors to expect the Company to generate net sales of between $6.7 billion and $6.9 billion, net income of between $725 million and $790 million, and adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") of between $1.45 billion and $1.525 billion.

---

[1] Lamb Weston's fiscal year is the annual period ending on the last Sunday in May of each year.

18.     That same day, Lamb Weston held an earnings call with analysts and investors to discuss the Company's fiscal fourth quarter and full year 2023 financial results.  During the call, Defendant Werner stated that "[w]e continued to strengthen our operational infrastructure by completing the design work for the next phase of our new enterprise resource planning system" and "[w]e'll begin implementing this new system across a portion of our supply chain in North America later this year."  During that call, Defendant Madarieta also discussed the Company's guidance for the full year of fiscal 2024, reiterating the Company's expected net sales of between $6.7 billion and $6.9 billion.

19.     On July 25, 2023, Lamb Weston also filed with the SEC its annual report on Form 10-K for the fiscal year ended May 28, 2023.  In the 10-K, the Company purported to warn that "[p]roblems with the transition, design, or implementation of our new ERP system could interfere with [its] business and operations and adversely affect our financial condition."  Lamb Weston also purported to warn investors of the ostensible risks that the Company "may continue to experience[ ] difficulties as we transition to new upgraded systems and business processes" and "[a]ny disruptions, delays, or deficiencies in the transition, design, and implementation of a new ERP system . . . could have a material adverse effect on our business, financial condition, and results of operations."

20.     On October 5, 2023, Lamb Weston issued a press release announcing its financial results for its fiscal first quarter ended August 27, 2023.  In the press release, which was also filed with the SEC on Form 8-K, Lamb Weston emphasized its "increased investments to upgrade the Company's information systems and ERP infrastructure."  Lamb Weston also raised its financial outlook for fiscal year 2024, expecting to generate net sales of between $6.8 billion and $7 billion,

net income of between $800 million and $870 million, and adjusted EBITDA of between $1.54 billion and $1.62 billion.

21.     On October 11, 2023, Lamb Weston issued a press release in connection with the Company's upcoming investor day.  In the press release, which was also filed with the SEC on Form 8-K, Lamb Weston highlighted its "Continued Strong Execution of Strategic Growth Initiatives," which included the ERP transition, and reaffirmed its financial guidance for fiscal 2024.

22.     That same day, Lamb Weston held its Investor Day conference.  During the conference, Defendant Werner represented that "[w]e are continuing to execute our strategies through our investments in business growth," including, among other things, "our ERP and IT system upgrades."  During the conference, Defendant Madarieta stated that Lamb Weston had "multiple strategic levers to pull to drive margin improvement," including its "supply chain productivity initiatives" as part of the Company's Win-as-One program, and the optimization of its global manufacturing network, "which will be aided by a global ERP system once it's fully implemented."

23.     On January 4, 2024, Lamb Weston held an earnings call with analysts and investors to discuss the Company's fiscal second quarter 2024 financial results.  During the call, Defendant Madarieta claimed that the Company had experienced only the "usual bumps" in implementing its new large-scale ERP system earlier in late November 2023.  Defendant Madarieta also assured investors that the Company "[does not] expect that the cutover will have a material impact on our full year business or operating results."  Specifically, Defendant Madarieta assured investors that "[t]he estimated financial impact of the system's go live is included in our fiscal 2024 targets," including, among other things, "reduced shipments due to short-term inventory visibility

challenges at our third-party finished goods warehouses." Defendant Madarieta also reaffirmed Lamb Weston's sales and adjusted EBITDA guidance for fiscal 2024, and reported an increase to its adjusted diluted earnings per share estimate to between $5.70 per share and $6.15 per share (representing net income of between $830 million to $900 million).

24.     During the call, Defendant Madarieta also provided investors with assurances that, post-ERP implementation, the Company was poised to deliver "positive year-over-year [sales] volume growth in our fiscal fourth quarter." Indeed, in response to an analyst's question about the impact of the ERP transition to Lamb Weston's sales volumes in the third quarter, Defendant Madarieta stated that sales volumes were "tempered in terms of [ ] any increase as it relates to volume in the third quarter, but definitely positive in the fourth quarter as we had originally projected."

25.     The statements set forth above in ¶¶ 17-24 were materially false and misleading, and failed to disclose material facts necessary to make the statements made, in light of the circumstances in which they were made, not false and misleading. In truth, Defendants knew of, or recklessly disregarded, problems associated with the ERP system that would hinder its successful implementation. Despite those issues, Lamb Weston pushed ahead with its implementation of an ERP system that was not ready to go live, knowing that a premature roll-out would have a material negative impact on the Company's business and operations. As a result, the statements concerning its business, operations, and prospects, including its financial guidance for fiscal 2024, lacked a reasonable factual basis. In addition, to the extent the Company purported to warn of risks regarding the negative impacts from an unsuccessful implementation of the ERP system, Defendants omitted that such risks had already begun to materialize.

## **THE TRUTH EMERGES**

26.    The truth emerged on April 4, 2024, when Lamb Weston reported financial results for its fiscal third quarter 2024, and disclosed significant problems with its transition to the new ERP system.  The system did not function properly, causing the Company to lose over $130 million in sales during its third quarter of fiscal 2024 and reduce its sales guidance for the full fiscal year by $330 million, at the midpoint.

27.    The unsuccessful ERP transition resulted in "reduced visibility into finished goods inventories at [ ] distribution centers," which negatively impacted the Company's ability to fulfill customer orders, resulting in shipment delays and cancelled orders.  In total, the ERP transition negatively impacted Lamb Weston's net sales by $135 million, net income by $72 million, and adjusted EBITDA by $95 million, with more than half of that due to lower sales and unfulfilled customer orders and the remainder due to incremental costs and expenses directly related to the ERP transition.  For the third quarter of fiscal 2024, the Company also reported a 17% decline in sales volumes in North America year-over-year, more than half of which Lamb Weston attributed to the ERP transition.

28.    Lamb Weston also reduced its financial outlook for fiscal 2024, including a $330 million reduction to its sales guidance, at the midpoint.  Lamb Weston disclosed that it expected its sales volumes in the fourth quarter to be negatively impacted by some customers in North America that were affected by the botched ERP transition, as those customers sought supply from Lamb Weston's competitors.

29.    As a result of these disclosures, the price of Lamb Weston stock declined by $19.59 per share, or 19.4%, from a closing price of $101.12 per share on April 3, 2024, to a closing price of $81.53 per share on April 4, 2024.

## LOSS CAUSATION

30.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

31.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Lamb Weston common stock and operated as a fraud or deceit on the Class (defined below).  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Lamb Weston common stock declined significantly.  As a result of their purchases of Lamb Weston common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities that purchased Lamb Weston common stock during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of Lamb Weston and their families and affiliates.

33.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of March 28, 2024, Lamb Weston had over 144 million shares of common stock outstanding, owned by hundreds or thousands of investors.

34.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Exchange Act;

(b)     Whether Defendants misrepresented and/or omitted material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of Lamb Weston common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damages sustained by Class members and the appropriate measure of damages.

35.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

36.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## **INAPPLICABILITY OF STATUTORY SAFE HARBOR**

38.     To the extent that any of the alleged false statements described in this Complaint were forward-looking, Lamb Weston's "Safe Harbor" warnings accompanying any purportedly

forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

39.     To the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false or misleading forward-looking statements because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Lamb Weston who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

40.     At all relevant times, the market for Lamb Weston common stock was an efficient market for the following reasons, among others:

(a)     Lamb Weston common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Lamb Weston filed periodic public reports with the SEC and the NYSE;

(c)     Lamb Weston regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)   Lamb Weston was followed by securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

41.   As a result of the foregoing, the market for Lamb Weston common stock promptly digested current information regarding Lamb Weston from all publicly available sources and reflected such information in the price of Lamb Weston common stock.   Under these circumstances, all purchasers of Lamb Weston common stock during the Class Period suffered similar injury through their purchase of Lamb Weston common stock at artificially inflated prices and the presumption of reliance applies.

42.   A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding Lamb Weston's business and operations—information that was required to be disclosed—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Company's new ERP system to its business and operations, that requirement is satisfied here.

## CLAIMS FOR RELIEF

## COUNT I

**For Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**Against All Defendants**

43.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

44.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Lamb Weston common stock at artificially inflated prices.

45.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Lamb Weston common stock in an effort to maintain artificially high market prices for Lamb Weston common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

47.     During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Lamb Weston's true condition from the investing public and to support the artificially inflated prices of Lamb Weston common stock.

49.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Lamb Weston common stock.  Plaintiff and the Class would not have purchased Lamb Weston common stock at the prices they paid, or at all, had they been aware that the market prices for Lamb Weston common stock had been artificially inflated by Defendants' fraudulent course of conduct.

50.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of Lamb Weston common stock during the Class Period.

51.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

**For Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

52.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Lamb Weston within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Lamb Weston, the Individual Defendants had

the power and ability to control the actions of Lamb Weston and its employees.  By reason of this

conduct, the Individual Defendants are liable under Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

54.     WHEREFORE, Plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the

Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of Plaintiff and other Class

members against all Defendants, jointly and severally, for all damages sustained as a result of

Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses

incurred in this action, including attorneys' fees and expert fees; and

D.     Awarding such equitable/injunctive or other further relief as the Court may

deem just and proper.

## JURY DEMAND

55.     Plaintiff demands a trial by jury.

DATED: June 13, 2024                                    Respectfully submitted,

*/s/ Scott McKay*
Scott McKay (ISB#4309)
Nathan Pittman (ISB#9430)
**NEVIN, BENJAMIN & MCKAY LLP**
303 W. Bannock
Boise, ID 83702
Telephone:  (208) 343-1000
Facsimile:  (208) 345-8274
smckay@nbmlaw.com
npittman@nbmlaw.com

*Local Counsel for Plaintiff Cleveland Bakers
and Teamsters Pension Fund*

Avi Josefson (*pro hac vice* application forthcoming)
Scott R. Foglietta (*pro hac vice* application forthcoming)
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
avi@blbglaw.com
scott.foglietta@blbglaw.com

Frank R. Schirripa (*pro hac vice* application forthcoming)
**HACH ROSE SCHIRRIPA &**
  **CHEVERIE LLP**
112 Madison Ave, 10th floor
New York, NY 10016
Telephone: (212) 213-8311
Facsimile:  (212) 779-0057
fschirripa@hrsclaw.com

*Counsel for Plaintiff Cleveland Bakers and Teamsters Pension Fund*

## CERTIFICATION PURSUANT TO
## FEDERAL SECURITIES LAWS

I, Carl Pecoraro, on behalf of the Cleveland Bakers and Teamsters Pension Fund hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am the Chairman of the Cleveland Bakers and Teamsters Pension Fund ("Fund") and am authorized to initiate litigation on the Fund's behalf and to execute this Certification.

2.      I have reviewed a complaint and authorize its filing.

3.      The Fund is willing to serve as a representative party on behalf of the Class (as defined in the complaint), including providing testimony at deposition and trial, if necessary.

4.      The Fund made the following transactions during the Class Period (as defined in the complaint), that are the subject of this action: *See* attached Schedule A.

5.      The Fund did not engage in the foregoing transactions at the direction of counsel or in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

6.      During the three-year period preceding the date of my signing this Certification, the Fund has not sought to serve as a representative party on behalf of a class in a private action arising under the Securities Act or the Exchange Act except in the following actions:

*Cleveland Bakers and Teamsters Pension Fund v. Netflix, Inc.*, No. 5:22-cv-03164 (N.D. Cal.)

*Cleveland Bakers and Teamsters Pension Fund v. Kornit Digital Ltd., et. al*, No. 2:23-cv-00971 (D.N.J.)

7.      The Fund will not accept any payment for serving as a representative party on behalf of the Class beyond its pro rata share of any possible recovery except for an award, as ordered by the court, for reasonable costs and expenses directly relating to its representation of the Class.

I certify under penalty of perjury that the foregoing is true and correct.

1

Executed this **11** day of June, 2024.

_____
Carl Pecoraro, Chairman
Cleveland Bakers and Teamsters Pension Fund

## SCHEDULE A

| Transaction Date | Transaction Type | #Shares | Price per Share |
|---|---|---|---|
| December 22, 2023 | Sale | 151 | $105.1399 |
| January 25, 2024 | Sale | 112 | $102.7000 |
| February 22, 2024 | Purchase | 688 | $104.1723 |