Lynnette M. Davis (ISB #5263)
Tyler J. Anderson (ISB #6632)
**HAWLEY TROXELL ENNIS & HAWLEY LLP**
877 W. Main Street, Suite 200
Boise, ID 83702
Telephone:    (208) 344-6000
Facsimile:     (208) 954-5213
ldavis@hawleytroxell.com
tanderson@hawleytroxell.com

[Additional counsel appear below]

*Attorney for Defendants Lamb Weston Holdings, Inc.,*
*Thomas P. Werner, and Bernadette M. Madarieta*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF IDAHO

| | |
|---|---|
| OFI INVEST ASSET MANAGEMENT, ON BEHALF OF OFI INVEST ACTIONS AMÉRIQUE, and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:24-cv-00282-DCN-CWD |
| Plaintiffs, | |
| v. | |
| LAMB WESTON HOLDINGS, INC., THOMAS P. WERNER, and BERNADETTE M. MADARIETA, | |
| Defendants. | |

### DEFENDANT LAMB WESTON HOLDINGS, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

03601.0024.4912-1264-6972.2

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    I.    The Illinois Actions................................................................................................. 2

    II.   Overlap Between the Illinois Actions and the Present Action........................................ 3

ARGUMENT ..................................................................................................................... 5

    I.    This Action Should be Transferred to the Northern District of Illinois Pursuant
        to 28 U.S.C. § 1404(a) ....................................................................................... 5

        A.    Venue is Appropriate in the Northern District of Illinois.................................... 5

        B.    The Factors Described in § 1404(a) Favor Transfer to the Northern
             District of Illinois............................................................................................ 6

             1.    The Interests of Justice Strongly Favor Transfer ........................................... 6

             2.    The Convenience of the Parties and Witnesses Favor Transfer...................... 9

    II.   Alternatively, this Court Could Allow Pretrial Proceedings to be Coordinated in
        Illinois or It Could Stay Antitrust Discovery Here ......................................... 11

        A.    Pretrial Proceedings Could be Coordinated and Conducted in Illinois ............... 11

        B.    Antitrust Discovery Here Could Be Stayed.......................................................... 12

CONCLUSION.................................................................................................................. 13

03601.0024.4912-1264-6972.2

## TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Alexander v. Franklin Res., Inc.*,
  2007 WL 518859 (N.D. Cal. Feb. 14, 2007) ...........................................................................10

*American Canine Found. v. Sun*,
  2006 WL 2092614 (E.D. Cal. July 27, 2006) ...........................................................................7

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
  2017 WL 661768 (E.D. Tex. Feb. 17, 2017) ...........................................................................11

*Automated Sol., Inc. v. Fadal Machining Ctr., LLC*,
  2011 WL 2182457 (D. Idaho June 6, 2011) ...........................................................................8

*B&R Supermarket, Inc. v. Visa, Inc.*,
  16-cv-00150 (N.D. Cal.), Dkt. 518 ...........................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................1

*Blackman v. Park West Galleries, Inc.*,
  2009 WL 1174639 (W.D. Wash. Apr. 29, 2009)...........................................................................12

*City of Warren Gen. Emps.' Ret. Sys. v. Teleperformance SE*,
  2023 WL 8372378 (D. Idaho Dec. 4, 2023) ...........................................................................9

*Comptroller of Currency v. Calhoun First Nat'l Bank*,
  626 F. Supp. 137 (D.D.C. 1985)...........................................................................11

*Fizer v. ThyssenKrupp Elevator*,
  2011 WL 6370028 (D. Idaho Dec. 19, 2011) ...........................................................................6

*Galmi v. Teva Pharm. Indus.*,
  2017 U.S. Dist. LEXIS 222966 (C.D. Cal. Apr. 3, 2017) ...........................................................................7

*Gupta v. Bonta*,
  2021 WL 10366002 (C.D. Cal. Nov. 18, 2021)...........................................................................6

*Hawkins v. Gerber Prods. Co.*,
  924 F. Supp. 2d 1208 (S.D. Cal. 2013)...........................................................................9

*Johansson v. Cent. Garden & Pet Co.*,
  2010 WL 4977725 (N.D. Cal. Dec. 2, 2010)...........................................................................7

*K&T, Inc. v. Budget Rent-A-Sys., Inc.*,
  2009 WL 10678077 (D. Idaho Dec. 31, 2009) ...........................................................................5

03601.0024.4912-1264-6972.2

*Kitzler v. Nelnet Servicing, LLC*,
  2022 WL 18284983 (C.D. Cal. Nov. 1, 2022)............................................................5

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998)........................................................................................................5

*In re Lithium Ion Batteries Antitrust Litig.*,
  2013 WL 2237887 (N.D. Cal. May 21, 2013) ..........................................................6

*McCullough v. World Wrestling Ent., Inc.*,
  2015 WL 13835101 (C.D. Cal. July 10, 2015) .........................................................6

*McNulty v. Reddy Ice Holdings, Inc.*,
  2011 WL 717479 (E.D. Mich. Feb. 22, 2011) .........................................................12

*Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.*,
  2010 WL 347901 (E.D. Cal. Jan. 22, 2010) ....................................................1, 6, 7

*In re Netflix Antitrust Litig.*,
  506 F. Supp. 2d 308 (N.D. Cal. 2007) .....................................................................12

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
  678 F.2d 93 (9th Cir. 1982) ........................................................................................8

*Papaleo v. Cingular Wireless Corp.*,
  2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) .....................................................6, 10

*Ricoh Co., Ltd. v. Honeywell, Inc.*,
  817 F. Supp. 473 (D.N.J. 1993) .................................................................................9

*Rodgers v. Color Street, LLC*,
  2023 WL 4627909 (D. Idaho July 19, 2023) ..........................................................8, 9

*Sousa v. Walmart, Inc.*,
  2023 WL 5278662 (E.D. Cal. Aug. 16, 2023).........................................................8

*Vehimax Int'l, LLC v. Jui Li Enter. Co., Ltd.*,
  2010 WL 11527371 (C.D. Cal. Mar. 16, 2010)........................................................6

**Statutes**

28 U.S.C. § 1391(c) .......................................................................................................5

28 U.S.C. § 1404............................................................................................................5

28 U.S.C. § 1404(a) ...........................................................................................*passim*

**INTRODUCTION**

Plaintiffs' newly filed Amended Complaint now contains antitrust allegations that do not belong in this Court. Those new allegations piggyback off thirty-four (34) class-action antitrust lawsuits that are currently pending in the United States District Court for the Northern District of Illinois. Those cases—like the securities case here—all similarly allege that Defendant Lamb Weston Holdings, Inc. ("Lamb Weston") violated the antitrust laws by conspiring with its competitors to prop up prices of frozen potato products. But the similarities do not end there. They both allege the exact same coconspirators, the same products, the same markets, the same relevant time period, and the same conduct. As a result, the instant securities case will likely require pretrial proceedings, including document and deposition discovery, involving the exact same parties and witnesses as in the Illinois antitrust actions, if the antitrust allegations survive Defendants' motion to dismiss here.[1]

This case should be transferred to the Northern District of Illinois, where the antitrust cases are pending. Transferring this case would be critical for judicial efficiency so a single federal court can assess the sufficiency of the antitrust allegations and, if necessary, manage the duplicative discovery. Few cases create more burdensome discovery than an antitrust case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ("proceeding to antitrust discovery can be expensive"). But it would be even more cumbersome for two separate federal judges to manage the very same allegations and discovery in a consistent manner. "Indeed, the Supreme Court and the Ninth Circuit have long recognized that to permit a situation in which two cases involving precisely the

---

[1] Defendants have filed a motion to dismiss the entire Amended Complaint, including the antitrust allegations, pursuant to the Private Securities Litigation Reform Act, Rule 9(b) and Federal Rule of Civil Procedure 12(b)(6) (Dkt. 66). If the Court determines to grant the Defendants' motion to dismiss, then this motion will be moot.

03601.0024.4912-1264-6972.2

same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *See Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.*, 2010 WL 347901, at *3 (E.D. Cal. Jan. 22, 2010). Accordingly, this Court should transfer this case to the Northern District of Illinois.

Alternatively, if this Court is not inclined to transfer this action to the Northern District of Illinois, then it should either allow pretrial proceedings in this case to be conducted in Illinois or stay any antitrust discovery here until such proceedings in Illinois have completed. In any event, this securities case as pled should not outrace the pending antitrust cases.

**BACKGROUND**

**I.     The Illinois Actions**

The first class-action lawsuit in the Northern District of Illinois, captioned *Redner's Market, Inc. v. Lamb Weston Holdings, Inc., et al.*, 24-cv-11801 (N.D. Ill.), was filed on November 15, 2024. It alleges that Lamb Weston and its coconspirators—processors of frozen french fries, hash browns, tater tots, and other frozen potato products—conspired to fix prices above competitive levels, starting in 2021. *See* Ex. 1 ¶¶ 1-2.[2] Since that lawsuit was filed, there have been thirty-three (33) other class-action complaints filed in the Northern District of Illinois that are still active—the majority of which were filed before February 21, 2025, the date Plaintiffs filed their Amended Complaint—each of which claims Lamb Weston and its coconspirators violated antitrust law. Nearly all these lawsuits have all been assigned to the Honorable Judge Jeffrey I. Cummings in the Northern District of Illinois.[3]

---

[2] For the purposes of this motion and for ease of reference, Lamb Weston represents that each of the class-action complaints filed in the Northern District of Illinois contains substantially the same factual allegations as the *Redner's Market* complaint.

[3] Each of these lawsuits is expected to be assigned to Judge Cummings; however, certain of Plaintiffs' motions to reassign their cases to his Honor remain pending as of the date of this filing.

2

03601.0024.4912-1264-6972.2

The *Redner's Market* complaint specifically alleges that Lamb Weston and its alleged coconspirators raised prices on frozen potato products artificially through lockstep price increases. *See id.* The complaint then details the alleged conspiracy and its alleged impact on the prices of frozen potato products across the country. *See id.* ¶¶ 64-79. Specifically, the complaint alleges that, starting in February 2021, the defendants began publicly announcing price increases, which each alleged coconspirator immediately adopted, resulting in uniform price increases of the frozen potato products at issue. *See id.* The complaint alleges that the defendants continued to institute these price increases, despite input costs eventually decreasing later in the relevant time period. *See id.* ¶ 79. The complaint also describes how the alleged market is supposedly ripe for collusion based on the structure and characteristics of the frozen potato product industry. *See id.* ¶¶ 80-114.

Based on these allegations, the *Redner's Market* plaintiff alleges it was harmed by the so-called conspiracy by paying "higher and artificially inflated prices" for frozen potato products than it otherwise would have, absent the alleged anticompetitive conduct. *Id.* ¶¶ 120, 124. The plaintiff seeks—on behalf of itself and others in the purported class of purchasers—monetary damages and injunctive relief. *Id.* ¶ 153.

## II.    Overlap Between the Illinois Actions and the Present Action

Those exact same allegations have now been placed front and center in this case. Here, the Amended Complaint alleges that Lamb Weston deceived investors, in part, by "inflat[ing] product prices based on unsustainable, anticompetitive practices, including coordinated price increases with 'competitors' that were not based on [Lamb Weston's] input costs." Am. Compl. ¶ 1.

Like the Illinois antitrust cases, the Amended Complaint now concerns much of the same conduct and parties:

- The **same alleged coconspirators**, including Lamb Weston;

- The **same products at issue**, specifically frozen potato products;

- The **same market**, the frozen potato products market;

- The **same conduct,** including Lamb Weston's supposed role in the alleged conspiracy to raise prices for frozen potato products above competitive levels; and

- The **same relevant time period**, from 2021 through the present.

Illustrative of these similarities, a comparison between the factual allegations in the Amended Complaint and those in the *Redner's Market* complaint reveals significant overlap:

- The Amended Complaint alleges that Lamb Weston and its alleged coconspirators used access to "pricing data" to coordinate price increases, and it specifically alleges the implementation of price increases on February 11, 2022, and in April 2022, May 2022, and May 2023. Am. Compl. ¶ 153. These same, specific instances of alleged price increases are referenced in the *Redner's Market* complaint. *See* Ex. 1 ¶¶ 70-78.

- The Amended Complaint alleges that the price increases in the frozen potato products market were "not reflective of external or macro market conditions," but instead were the result of anticompetitive behavior among competitors. The Amended Complaint references data from the Federal Reserve Bank of St. Louis and includes a graph from the Federal Reserve Economic Data ("FRED") showing the price index for the frozen potato products increasing "slowly and steadily." Am. Compl. ¶¶ 155-56. The *Redner's Market* complaint includes substantially similar allegations and also references a FRED graph. *See* Ex. 1 ¶¶ 61-62.

- The Amended Complaint makes allegations about the frozen potato products market being ripe for collusion because of its structure and characteristics. *See* Am. Compl. ¶162. These same allegations are described in the *Redner's Market* complaint. See Ex. 1 ¶¶84-114.

The significant overlap of factual allegations is not limited to the above examples, as they are meant to simply illustrate the vast similarities between the allegations of anticompetitive conduct in this action and in the class-action lawsuits.

Because of this significant overlap, and for the reasons explained further below, this Court should transfer this action to the United States District Court for the Northern District of Illinois.

4

## ARGUMENT

**I.     This Action Should Be Transferred to the Northern District of Illinois Pursuant to 28 U.S.C. § 1404(a)**

This Court should transfer this case to the Northern District of Illinois, where the antitrust cases are pending, pursuant to 28 U.S.C. § 1404(a).  Under Section 1404(a), a court may transfer any civil case "for the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of the transfer statute "is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense." *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 33 (1998); *see also K&T, Inc. v. Budget Rent-A-Sys., Inc.*, 2009 WL 10678077, at \*1 (D. Idaho Dec. 31, 2009); Ex. 2, *B&R Supermarket, Inc. v. Visa, Inc.*, 16-cv-00150 (N.D. Cal.), Dkt. 518 (order granting motion to transfer).

"The analysis under § 1404 is twofold.  First, the defendant must establish that the matter might have been brought in the district to which transfer is sought.  Second, the Court must balance three factors: (1) convenience of the parties; (2) convenience of the witnesses; and (3) interests of justice." *Kitzler v. Nelnet Servicing, LLC*, 2022 WL 18284983, at \*2 (C.D. Cal. Nov. 1, 2022).  Each of these elements is met here.

### A.     Venue Is Appropriate in the Northern District of Illinois

Plaintiffs cannot dispute that their claims against Lamb Weston "might have been brought" in the Northern District of Illinois.  28 U.S.C. § 1404(a); *see also* 28 U.S.C. § 1391(c) (venue is appropriate "in any judicial district in which [the corporate defendant] is subject to personal jurisdiction at the time the action is commenced.").  Lamb Weston is subject to personal

5

jurisdiction in the Northern District of Illinois, as required to establish venue pursuant to 28 U.S.C. § 1391(c).[4]  Accordingly, the Northern District of Illinois is an appropriate venue for this case.

**B.    The Factors Described in § 1404(a) Favor Transfer to the Northern District of Illinois**

Moreover, all the Section 1404(a) factors strongly favor the transfer of this action to the Northern District of Illinois.  28 U.S.C. § 1404(a); *see also Fizer v. ThyssenKrupp Elevator*, 2011 WL 6370028, at *1 (D. Idaho Dec. 19, 2011); Ex. 2.

**1.    The Interests of Justice Strongly Favor Transfer**

"The 'interests of justice' factor is the most important factor for the court to consider. . .  because [it] relates to the efficient functioning of the courts—that is, whether transfer will avoid duplicative litigation and inconsistent judgments."  *Vehimax Int'l, LLC v. Jui Li Enter. Co., Ltd.*, 2010 WL 11527371, at *4 (C.D. Cal. Mar. 16, 2010); *see also Gupta v. Bonta*, 2021 WL 10366002, at *2 (C.D. Cal. Nov. 18, 2021) ("[E]valuation of the interests of justice is the most important factor a court must consider, and may be decisive even when all other factors point the other way.").

First, there is a strong public policy interest in favor of bringing related cases in one forum to ensure that discovery is efficient and judicial resources are conserved, but this is particularly true for antitrust cases, for which discovery can be tremendously expensive and time-consuming. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2013 WL 2237887, at *2 (N.D. Cal. May 21, 2013) ("Courts acknowledge that antitrust discovery can be enormously expensive and burdensome."); *Med. Dev. Int'l*, 2010 WL 347901, at *4 ("Ultimately, the adjudication of this

---

[4] While Lamb Weston is headquartered in Eagle, Idaho, for the reasons discussed *infra*, it believes that the interests of justice and the convenience of the parties and the witnesses strongly favor transfer of this case to the Northern District of Illinois—a venue in which Lamb Weston does indeed have business operations.

03601.0024.4912-1264-6972.2

matter in the Northern District will promote judicial economy, conserve the parties' resources, and avoid inconsistent judgments—all in the furtherance of the 'interests of justice.'"); *McCullough v. World Wrestling Ent., Inc.*, 2015 WL 13835101, at *5 (C.D. Cal. July 10, 2015) (transferring case in the interests of justice given pending related cases in another jurisdiction); *Papaleo v. Cingular Wireless Corp.*, 2007 WL 1238713, at *2 (N.D. Cal. Apr. 26, 2007) (transferring case because it would meet the objectives of § 1404(a) to "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts").

Second, the interests of justice are served by transferring this action to the Northern District of Illinois because of the significant overlap between the factual allegations in the class-action lawsuits and those in Plaintiffs' Amended Complaint. *See Med. Dev. Int'l*, 2010 WL 347901, at *3 ("Indeed, the Supreme Court and the Ninth Circuit have long recognized that to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent."). While this case is not identical to the Illinois antitrust cases, the issues related to the overlapping allegations will be the same. As such, transfer would not only safeguard the litigants from engaging in duplicative discovery on complex issues that would undoubtedly lead to a tremendous waste of time and expense, but it would also promote judicial efficiency. *See Galmi v. Teva Pharm. Indus.*, 2017 U.S. Dist. LEXIS 222966, at *4, *7 (C.D. Cal. Apr. 3, 2017) (transferring securities cases—which were based on allegations that defendants made misleading public statements and omissions regarding a price fixing scheme with industry peers—to a transferee jurisdiction that "[was] both the location of one of the non-party witnesses, and the venue for an antitrust lawsuit . . . related to these cases," citing the convenience of the witnesses

7

and the interests of justice); *American Canine Found. v. Sun*, 2006 WL 2092614, at *3 (E.D. Cal. July 27, 2006) ("The issues . . . will likely be the same in both cases despite the existence of some differences in the causes of action pled and the defendants named.  It would save judicial resources, time and money to have these similar cases tried in the same district."); *see also Johansson v. Cent. Garden & Pet Co.*, 2010 WL 4977725, at *2 (N.D. Cal. Dec. 2, 2010) ("Importantly, in putative class actions . . . even where the causes of action are not similar but are based on similar allegations pled in a later-filed action, concerns over judicial efficiency are paramount.").

Finally, transferring this case to the Northern District Court is in accord with the first-to-file rule.  That rule allows a district court "to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).  Under this rule, "the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy."  *Automated Sol., Inc. v. Fadal Machining Ctr., LLC*, 2011 WL 2182457, at *3 (D. Idaho June 6, 2011).

Here, the antitrust allegations were not included in the original complaints, and they were added to the Amended Complaint only after the majority of the 34 class-action lawsuits were filed in the Northern District of Illinois.  While the parties and claims are not identical, there needs to be only "substantial similarity of parties" and "substantial similarity in the overlap of the claims and issues" to find that the "court that first acquired jurisdiction should, in most instances, try the case."  *Rodgers v. Color Street, LLC*, 2023 WL 4627909, at *6-7 (D. Idaho July 19, 2023).

What is more, it makes no difference that the securities case (bereft of antitrust allegations) was filed before the antitrust complaints.  The crucial time for purposes of the first-to-file rule is when the securities case was filed *with* the antitrust allegations.  *See Sousa v. Walmart, Inc.*, 2023

8

WL 5278662 (E.D. Cal. Aug. 16, 2023) (finding second-filed case was the "first filed with respect to state labor violations arising from [defendant's] COVID-19 screening policies and procedures" and therefore, was the "first to file" over previously filed wage and overtime claims).  Because the Northern District of Illinois was the original jurisdiction in which the factual allegations supporting Plaintiffs' antitrust claims were brought, this Court should transfer this action to promote judicial efficiency and safeguard the parties against the avoidable inconvenience and expense of duplicative litigation.

### 2. The Convenience of the Parties and Witnesses Favors Transfer

The second prong of the analysis—the convenience of the parties and the witnesses—also favors transferring this action to the Northern District of Illinois.

As an initial matter, Plaintiffs' choice of the District of Idaho should be afforded little deference.  "Where a plaintiff does not reside within its chosen district, its choice will be afforded even less weight." *See, e.g.*, *City of Warren Gen. Emps.' Ret. Sys. v. Teleperformance SE*, 2023 WL 8372378, at \*3 (D. Idaho Dec. 4, 2023); *Rodgers*, 2023 WL 4627909, at \*4 (finding that the deference afforded to plaintiff's chosen venue is "substantially reduced where the plaintiff does not reside in the venue").  In this securities case, none of the Plaintiffs reside in Idaho: Lead Plaintiff Ofi Invest Asset Management is headquartered in Paris, France; Lead Plaintiff Oklahoma Police Pension and Retirement System is headquartered in Oklahoma City, Oklahoma.[5]  None of them have any connection with the state of Idaho.

---

[5] Plaintiffs Cleveland Bakers and Teamsters Pension Fund is headquartered in Valley View, Ohio; West Palm Beach Firefighters' Pension Fund is based in West Palm Beach, Florida; International Brotherhood of Teamsters Local No. 710 Pension Fund based in Mokena, Illinois; the Macomb County Employees' Retirement System, Macomb County Retiree Health Care Fund, and Macomb County Intermediate Retirees Medical Benefits Trust are all based in Mount Clemens, Michigan.

9

Moreover, Plaintiffs have no interest in litigating this case in Idaho. As a class action, Plaintiffs should be given very little deference in their choice of forum. *See Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) ("[I]n class actions, a plaintiff's choice of forum is often accorded less weight."). And because each of the Plaintiffs will be traveling thousands of miles to the forum, regardless of whether that forum is in Idaho or Illinois, Plaintiffs would not be significantly inconvenienced by the transfer. *See Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 484 (D.N.J. 1993) ("[Plaintiff's] witnesses are already inconvenienced by having to travel thousands of miles from their homes to testify. Minnesota is no more inconvenient for these witnesses than New Jersey."). In short, no Plaintiff can argue it would be inconvenienced by a transfer to the Northern District of Illinois.

The flipside, of course, is that transferring the action to the Northern District of Illinois would greatly benefit both party and nonparty witnesses. Lamb Weston has long had business operations located in the Chicagoland area. Moreover, since Plaintiffs' "anticompetitive" and "conspiracy" allegations will likely involve the same alleged "co-conspirators" and witnesses in the antitrust cases, it would be much more convenient for one federal judge to oversee the discovery and depositions of each of these witnesses to ensure that they are not being pelted with multiple depositions and document requests and in two separate district courts. *See Alexander v. Franklin Res., Inc.*, 2007 WL 518859, at *3 (N.D. Cal. Feb. 14, 2007) ("With respect to the convenience of the parties, appearing in a single district is more convenient than appearing in two different districts."); *Papaleo*, 2007 WL 1238713, at *2 (granting motion to transfer because transfer "would be substantially more convenient for [the third-party witnesses] because such witnesses would not be required to engage in duplicative litigation or travel to two different forums to attend court proceedings."). If the antitrust allegations here survive Defendants' motion to

10

dismiss, coordinating discovery will be paramount to avoid duplication. Hence, the convenience of the parties and the witnesses strongly favors transfer of this case to the Northern District of Illinois.

## II. Alternatively, This Court Could Allow Pretrial Proceedings to Be Coordinated in Illinois or It Could Stay Antitrust Discovery Here

If this Court is not inclined to transfer this action to the Northern District of Illinois, then it should consider either (1) allowing any discovery proceedings concerning the Amended Complaint to be coordinated and conducted in Illinois or (2) staying any antitrust discovery here until the class-action lawsuits pending in Illinois are resolved.

### A. Pretrial Proceedings Could Be Coordinated and Conducted in Illinois

For the same reasons as discussed above, this Court could allow the parties to coordinate and conduct all pretrial proceedings, including discovery (if and when it occurs), concerning the Amended Complaint in Illinois concurrently with discovery in the class actions, as that would promote judicial efficiency and prevent the parties from expending tremendous resources on costly and time-consuming antitrust discovery. *See also Archer & White Sales, Inc. v. Henry Schein, Inc.*, 2017 WL 661768, at *4 (E.D. Tex. Feb. 17, 2017) (denying defendants' motion to stay discovery because a stay "would prevent [p]laintiff from coordinating with the litigants in the ongoing related [antitrust] proceedings, thus limiting the synergies and efficiencies that could otherwise accrue to substantial benefit," and failing to coordinate discovery "would necessarily increase discovery costs for [p]laintiff—and potentially for [the] [d]efendant" subject to the related antitrust actions); *Comptroller of Currency v. Calhoun First Nat'l Bank*, 626 F. Supp. 137, 141 (D.D.C. 1985) ("While a transfer of this case would not be likely to result in the consolidation of this action with the others, at a minimum such a transfer could facilitate the coordination of pretrial discovery. Additionally, since the same witnesses and documents will probably be important to

11

all actions, it would save the time and energies of the witnesses, the parties, and the attorneys to have all the actions litigated in the same geographical area.").

Additionally, this option would be efficient for the court and the parties, as it would eliminate any potentially inconsistent rulings concerning common questions of fact and law related to the overlapping allegations of Lamb Weston's supposed anticompetitive conduct. *See McNulty v. Reddy Ice Holdings, Inc.*, 2011 WL 717479, at *3 (E.D. Mich. Feb. 22, 2011) (rejecting plaintiff's request in a RICO case to seek discovery from defendants related to an antitrust theory that was the subject of related lawsuits, emphasizing that "the [c]ourt rejects [p]laintiff's attempt to turn this case into a mini-trial on the merits of the nationwide conspiracy claims that are the subject of the antitrust and securities class action lawsuits.").

## B.    Antitrust Discovery Here Could Be Stayed

Alternatively, if the Court is not inclined to allow pretrial proceedings and discovery concerning the Amended Complaint to proceed in Illinois, then the Court could instead elect to stay discovery of Plaintiffs' antitrust allegations (if those allegations survive the Defendants' motion to dismiss) here until the pending class-action lawsuits in Illinois come to a resolution. A stay would prevent inconsistent rulings and potentially save the parties from expensive and time-consuming litigation, should the Northern District of Illinois find that the class-action complaints alleging antitrust violations are meritless. *See Blackman v. Park West Galleries, Inc.*, 2009 WL 1174639, at *1 (W.D. Wash. Apr. 29, 2009) (denying motion to transfer defendants did not meet their burden to show that the matter should be transferred, but staying discovery because of "[c]oncerns regarding judicial efficiency and the possibility of conflicting rulings"); *see also In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) ("[S]taying discovery may be particularly appropriate in antitrust cases, where discovery tends to be broad, time-consuming, and expensive.").

12

03601.0024.4912-1264-6972.2

## CONCLUSION

For the foregoing reasons, Defendant Lamb Weston respectfully requests that the Court grant its motion to transfer this case to the United States District Court for the Northern District of Illinois, or, alternatively, either allow any antitrust discovery to proceed in Illinois or stay such discovery until the class-action lawsuits in Illinois are resolved.

Dated: April 28, 2025

Respectfully submitted,

By: *Lynnette M. Davis*
One of Its Attorneys

Lynnette Davis (ISB #5263)
Tyler J. Anderson (ISB #6632)
**HAWLEY TROXELL**
877 W. Main Street, Suite 200
Boise, ID 83702
Telephone: (208) 344-6000
Facsimile: (208) 954-5213
ldavis@hawleytroxell.com
tanderson@hawleytroxell.com

Geoffrey J. Ritts (admitted *pro hac vice*)
**JONES DAY**
North Point
901 Lakeside Avenue
Cleveland, OH 44114
Telephone:    (216) 586-3939
Facsimile:    (216) 586-0212
gjritts@jonesday.com

Marjorie P. Duffy (admitted *pro hac vice*)
**JONES DAY**
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215
Telephone:    (614) 469-3939
Facsimile:    (614) 461-4198
mpduffy@jonesday.com

*Attorney for Defendants Lamb Weston*
*Holdings, Inc., Thomas P. Werner, and*
*Bernadette M. Madarieta*

13

03601.0024.4912-1264-6972.2

## CERTIFICATE OF SERVICE

I hereby certify that on this April 28, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF system.  Copies of the document will be served on all counsel of record automatically by operation of the Court's CM/ECF filing system.

_____

*One of the Attorneys for Defendants Lamb Weston Holdings, Inc., Thomas P. Werner, and Bernadette M. Madarieta*

14

03601.0024.4912-1264-6972.2