Scott McKay (ISB #4309)
Nathan Pittman (ISB#9430)
**NEVIN, BENJAMIN & MCKAY LLP**
303 W. Bannock Street
Boise, Idaho 83702
Tel.: (208) 343-1000
Fax: (208) 345-8274
smckay@nbmlaw.com
npittman@nbmlaw.com

*Local Counsel for Lead Plaintiffs*
*and the Class*

[Additional counsel listed on signature pages]

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| OFI INVEST ASSET MANAGEMENT, ON BEHALF OF OFI INVEST ACTIONS AMÉRIQUE, and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> LAMB WESTON HOLDINGS, INC., THOMAS P. WERNER, and BERNADETTE M. MADARIETA, <br><br> Defendants. | Case No.: 1:24-cv-00282-DCN <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANT LAMB WESTON HOLDINGS, INC.'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) [ECF NO. 67]** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

I.    The Filing of the This Action and Then the Antitrust Actions ........................................ 2

II.   This Action and the Antitrust Actions are Separate and Distinct, with No Legally
Consequential Overlap ................................................................................................ 5

ARGUMENT ..................................................................................................................... 7

I.    This Action Does Not Meet the Standard for Transfer Under 28 U.S.C. § 1404(a) ........... 7

    A.    Lamb Weston Failed to Establish That Venue is Appropriate in the
Northern District of Illinois ................................................................................ 8

    B.    The Convenience of the Parties and Witnesses, the Interests of Justice, and
the *Jones* Factors Weigh in Favor of Denying Transfer ....................................... 8

        1.    Plaintiffs' Choice of Forum and the Contacts with the Forum
Strongly Support Denial of the Motion ......................................................... 9

        2.    The District of Idaho is the Best Forum ...................................................... 11

    C.    The First-to-File Rule Supports Denial of the Motion ......................................... 15

II.   The Court Should Reject Lamb Weston's Alternative Requests to Coordinate
Discovery in Illinois or Stay Antitrust Discovery ........................................................ 18

    A.    Coordination of Pretrial Proceeding in Illinois is Unnecessary and
Premature ....................................................................................................... 18

    B.    A Stay of Antitrust Discovery Would Unfairly Prejudice Plaintiffs and is
Unwarranted Under the Circumstances ............................................................. 19

CONCLUSION ................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Canine Found. v. Sun*,
  2006 WL 2092614 (E.D. Cal. July 27, 2006) ...........................................................................15

*Barnes & Noble, Inc. v. LSI Corp.*,
  823 F. Supp. 2d 980 (N.D. Cal. 2011) .....................................................................................15

*Callwood v. Phenix City*,
  2016 WL 1122681 (M.D. Ala. Mar. 22, 2016)........................................................................12

*Cedars-Sinai Med. Ctr. v. Shalala*,
  125 F. 3d 765 (9th Cir. 1997) ..................................................................................................17

*Comptroller of Currency v. Calhoun First Nat'l Bank*,
  626 F. Supp 137 (D.D.C. 1985) ...............................................................................................19

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F. 2d 834 (9th Cir. 1986) .....................................................................................................7

*Doe v. Tenet Healthcare Corp.*,
  2024 WL 3088709 (E.D. Cal. June 21, 2024) .........................................................................18

*Evanston Police Pension Fund v. McKesson Corp.*,
  411 F. Supp. 3d 580 (N.D. Cal. 2019) .......................................................................................6

*In re Ferrero Litig.*,
  768 F. Supp. 2d 1074 (S.D. Cal. 2011).....................................................................................11

*Galmi v. Teva Pharm. Indus.*,
  2017 U.S. Dist. LEXIS 222966 (C.D. Cal. Apr. 3, 2017) .......................................................13

*General Ret. Sys. of City of Detroit v. Wells Fargo Mortg. Backed Sec. 2006-*
  *AR18 Trust*,
  2009 WL 2137094 (N.D. Cal. July 16, 2009)......................................................................9, 10

*Gupta v. Bonta*,
  2021 WL 10366002 (C.D. Cal. Nov. 8, 2021)..........................................................................14

*IDACORP, Inc. v. Am. Fiber Sys., Inc.*,
  2012 WL 4139925 (D. Idaho Sept. 19, 2012)...........................................................................13

*Jim v. CoreCivic of Tennessee, LLC*,
  2021 WL 4990084 (D.N.M. Oct. 27, 2021)..............................................................................17

*Johansson v. Central Garden & Pet Co.*,
 2010 WL 4977725 (N.D. Cal. Dec. 2, 2010) ........................................................................13

*Jones v. GNC Franchising, Inc.*,
 211 F. 3d 495 (9th Cir. 2000) ..................................................................................... *passim*

*Kitzler v. Nelnet Servicing, LLC*,
 2022 WL 18284983 (C.D. Cal. Nov. 1, 2022).........................................................................7

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*,
 2024 WL 2804084 (D. Ariz. May 31, 2024) .............................................................9, 10, 11

*In re Lithium Ion Batteries Antitrust Litig.*,
 2013 WL 2237887 (N.D. Cal. May 21, 2013) .......................................................................14

*Manchin v. PACS Group, Inc., et al.*,
 2025 WL 1276569 (S.D.N.Y. May 1, 2025) .........................................................................14

*McCullough v. World Wrestling Ent. Inc.*,
 2015 WL 13835101 (C.D. Cal. July 10, 2015).......................................................................15

*NWDC Resistance v. Immigration & Customs Enf.*,
 2019 WL 12262490 ................................................................................................................17

*Papaleo v. Cingular Wireless Corp.*,
 2007 WL 1238713 (N.D. Cal. Apr. 26, 2007) .......................................................................15

*Pizana v. SanMedica Int'l LLC*,
 2020 WL 469336 (E.D. Cal. Jan. 29, 2020) ..........................................................................12

*Prescott v. CVS Health Corp.*,
 2017 WL 5756873 (W.D. Wash. Nov. 28, 2017) ..................................................................17

*Rodgers v. Color Street LLC*,
 2023 WL 4627909 (D. Idaho July 19, 2023) .............................................................7, 15, 17

*Sony Electronics, Inc. v. Guardian Media Techs., Ltd.*,
 2007 WL 3333113 (S.D. Cal. 2007) ......................................................................................14

*Sousa v. Walmart, Inc.*,
 2023 WL 5278662 (E.D. Cal. Aug. 16, 2023).......................................................................16

*Starr Indem. & Liab. Co. v. Brightstar Corp.*,
 324 F. Supp. 3d 421 (S.D.N.Y. 2018).....................................................................................9

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
 2013 WL 2247394 (C.D. Cal. May 9, 2013) ..........................................................................8

*Vehimax Int'l, LLC v. Jui Li Enter. Co., Ltd.*,
2010 WL 11527371 (C.D. Cal. Mar. 16, 2010) ........................................................14

*Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York*,
2020 WL 4194729 (S.D.N.Y. July 21, 2020) ...........................................................19

*Volman v. Sony BMG Music Entm't*,
2008 WL 11338007 (C.D. Cal. Aug. 15, 2008)........................................................12

*Wilkie v. Gentiva Health Services, Inc.*,
2010 WL 3703060 (E.D. Cal. Sept. 16, 2010)..........................................................17

*Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*,
42 F. Supp. 3d 1377 (S.D. Cal. 2014).......................................................................15

**Statutes**

28 U.S.C. § 1391(b) .............................................................................................................8

28 U.S.C. § 1404(a) .............................................................................................................7

iv

Lead Plaintiffs Ofi Invest Asset Management ("Ofi Invest"), on behalf of Ofi Invest Actions Amérique, Oklahoma Police Pension and Retirement System ("Oklahoma Police"), and Plaintiff Cleveland Bakers and Teamsters Pension Fund ("Cleveland Bakers," and together with Lead Plaintiffs, "Plaintiffs") submit this memorandum of points and authorities in response to Defendant Lamb Weston Holding, Inc.'s ("Lamb Weston" or the "Company") motion to transfer pursuant to 28 U.S.C. § 1404(a) (ECF No. 67, the "Motion").

## INTRODUCTION

Lamb Weston seeks to transfer this securities fraud action (the "Action")—pending in the District where Lamb Weston is headquartered—to the Northern District of Illinois, where a series of distinct antitrust actions (the "Antitrust Actions") are pending.  The Motion should be denied. The Antitrust Actions are distinct from this Action and Lamb Weston's Motion does not satisfy the relevant factors under 28 U.S.C. § 1404(a) for transfer.  Lamb Weston principally asserts that transfer is necessitated because the Antitrust Actions overlap substantially with this Action and discovery will need to be coordinated among the cases.  That assertion is wrong.

The Action centers around this District.  Lamb Weston's headquarters is located just ten miles from the Boise courthouse, the key events in the case concerning the ERP transition and pricing decisions occurred here, and the majority of the trial witnesses (Lamb Weston employees) are believed to be located here.  Lamb Weston's only substantive argument—a speculative concern about overlapping discovery—is manifestly premature.  Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), discovery in this Action is automatically stayed during the pendency of a motion to dismiss, which Lamb Weston filed three days prior to filing this Motion (*see* ECF No. 66, the "Motion to Dismiss").  As a result, there is currently no discovery taking place, and when discovery does begin, any coordination issues can be readily managed by this Court.

This Action presents different legal and factual issues than the Antitrust Actions. The Antitrust Actions assert claims under an entirely different statutory regime on behalf of distinct putative classes, against numerous defendants, with only one overlapping party: Lamb Weston. While this Action is brought on behalf of Lamb Weston investors and alleges that Defendants made materially false and misleading statements to investors that artificially inflated the price of the Company's common stock, the 34 Antitrust Actions are brought on behalf of consumers, wholesalers, restaurants, and retailers that purchased frozen potato products from several potato producers, and assert unrelated claims under the Sherman Act and state antitrust laws. This limited factual overlap does not justify transfer, and the attendant delay of proceedings in this Action.

The relevant factors established by the Ninth Circuit in *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 498 (9th Cir. 2000), weigh heavily in favor of maintaining the Action in this District. Based on the *Jones* factors, Lamb Weston has failed to carry its burden to show that the Northern District of Illinois is an appropriate or more convenient forum under 28 U.S.C. § 1404(a). Nor does the first-to-file rule support transfer, as this Action is the earlier-filed case.

Lamb Weston cannot come close to showing that the claims of defrauded investors who bought Lamb Weston common stock are so closely intertwined to the claims of consumers and businesses who overpaid for frozen french fries, hash browns, and tater tots as to justify transfer of this case to the Northern District of Illinois and its Motion should be denied.

**BACKGROUND**

I.    **The Filing of the This Action and Then the Antitrust Actions**

This Action started on June 13, 2024, when plaintiff Cleveland Bakers and Teamsters Pension Fund filed a class action in this District against defendants Lamb Weston, Thomas P. Werner, and Bernadette M. Madarieta (collectively, "Defendants") alleging that Defendants' misrepresentations and omissions regarding implementation of Lamb Weston's Enterprise

2

Resource Planning ("ERP") software system violated Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act") and SEC Rule 10b-5 thereunder. *See* ECF No. 1.

Applying the PSLRA, Ofi Invest and Oklahoma Police were appointed as Lead Plaintiffs in this Action on November 12, 2024 (ECF No. 38) and the Court ordered the filing of Lead Plaintiffs' amended complaint on or before February 21, 2025 (ECF No. 58). Plaintiffs filed the amended complaint on February 21, 2025 (ECF No. 62, the "Amended Complaint"), asserting securities fraud claims under the Exchange Act "on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Lamb Weston common stock between July 25, 2023 and December 19, 2024, inclusive." Amended Complaint at ¶284.[1] The Amended Complaint details Defendants' false statements in connection with the disastrous rollout of Lamb Weston's new ERP system, allegations that are supported by high-ranking former employees of Lamb Weston. The Amended Complaint also included allegations that, at the same time Defendants were mispresenting the rollout of the ERP system, Lamb Weston was falsely attributing its higher margins to pricing actions that were taken to counter various forms of inflation, when in fact those pricing actions were the result of supra-competitive pricing activity between Lamb Weston and its so-called "competitors." *See* Amended Complaint ¶¶145-62.

The first of the Antitrust Actions was filed on November 15, 2024 (five months after this Action) with the filing of an action in the Northern District of Illinois, captioned *Redner's Market, Inc. v. Lamb Weston Holdings, Inc., et al.*, No. 24-cv-11801 (N.D. Ill.). *Redner's Market* was filed against Lamb Weston and three of its competitors—who are not parties to this Action—asserting claims under Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3 alleging a conspiracy to fix

---

[1] Unless otherwise noted, all emphasis is added, and internal quotations and citations are omitted. All capitalized terms undefined in this Memorandum are defined as in the Amended Complaint.

the prices of frozen potato products above competitive levels. *See* ECF No. 68. The Antitrust Actions generally allege that venue is proper in the Northern District of Illinois because one of the defendants/alleged co-conspirators in that case, McCain Foods USA, Inc., is headquartered in Oak Brook, Illinois. *Id.* at ¶14.[2] The Antitrust Actions assert a broader class period and conspiracy that is alleged to continue through the present, as the class in that case is brought on behalf of "[a]ll persons or entities that directly purchased Frozen Potato Products from one or more Defendants within the United States from January 1, 2021, until the time that the adverse effects of Defendants' anticompetitive conduct cease []." *Id.* at ¶130.

Since the filing of *Redner's Market*, 33 additional related antitrust cases were filed and are now styled as *In re Frozen Potato Products Antitrust Litigation*, No. 24-cv-11801 (N.D. Ill.). None of the defendants in the Antitrust Actions include Thomas P. Werner and Bernadette M. Madarieta, who are the named "Individual Defendants" in this Action. *See* Amended Complaint at ¶¶28-30. All of the Antitrust Actions are in the earliest stages of litigation. There is currently no operative complaint(s) filed in the Antitrust Actions and all deadlines have been stayed pending resolution of multiple competing motions to appoint different laws firms as plaintiffs' lead counsel on behalf of different types of consumers.

---

[2] McCain Foods USA, Inc. is the U.S.-based subsidiary of another defendant, McCain Foods Limited, which is headquartered in Toronto. Other defendants include J.R. Simplot Co., which is headquartered in Boise; Cavendish Farms Ltd., headquartered in New Brunswick, Canada; and Cavendish Farms, Inc., the U.S.-based subsidiary headquartered in North Dakota. *See* ECF No. 68 at ¶¶23-32. With two of the four defendant groups located in Boise (Lamb Weston and J.R. Simplot), it appears that the decision to file the Antitrust Actions in Chicago was based more on strategic reasons than location of evidence and convenience of the witnesses.

**II.    This Action and the Antitrust Actions are Separate and Distinct, with No Legally Consequential Overlap**

The presence of Lamb Weston as the single common party is the only direct overlap between this Action and the Antitrust Actions. This Action and the Antitrust Actions assert entirely different legal claims and theories of liability and concern distinct putative classes, *i.e.*, investors who purchased Lamb Weston common stock versus consumers and businesses who purchased frozen potato products sold at various stages in the distribution chain.

Lamb Weston does not (and cannot) dispute that nearly 40 pages of the Amended Complaint detailing Defendants' fraudulent misrepresentations concerning the implementation of Lamb Weston's ERP system ***have nothing to do with the Antitrust Actions***. *See* Amended Complaint at ¶¶36-141. Allegations that Defendants in this Action misrepresented the Company's pricing practices and the purportedly "competitive" nature of their market environment does not transform these fundamentally unrelated matters into overlapping proceedings.

Still, Lamb Weston contends that the two actions involve the "exact same allegations" (*see* Motion at 3), even though the claims asserted in this Action differ in virtually every aspect of the applicable legal theory, required elements, standards of pleading and proof, injured parties, and damages. Plaintiffs' claims in this Action allege securities fraud—that Defendants made material misstatements or omissions with scienter that misled investors and caused economic loss—under a single statute, the Exchange Act. *See* Amended Complaint at ¶¶197-237. The focus is on deceptive conduct in connection with the purchase of common stock at prices artificially inflated by misstatements and omissions made by Lamb Weston and its top executive officers.

5

By contrast, the Antitrust Actions primarily assert claims under the Sherman Act,[3] which require proof of a conspiracy or agreement among Lamb Weston and its competitors to unreasonably restrain trade—elements Plaintiffs do not have to establish for their securities fraud claims that Defendants' statements and omissions regarding competition and pricing were false and misleading. *See* Amended Complaint at ¶¶238-59; *see also Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 599 (N.D. Cal. 2019) (finding statements that market was "competitive" were "misleading" even though plaintiffs did not show that defendant participated in price-fixing conspiracy). Unlike antitrust liability, which necessitates provable concerted action among two or more actors, liability for securities fraud may arise from a single defendant's material misstatements or omissions. *See McKesson*, 411 F.Supp.3d at 599.

Any suggestion that judicial efficiency would be served by transferring this Action to the forum where the Antitrust Actions are pending ignores the absence of factual, legal, or procedural commonality. Transferring this Action would also not promote efficiency; it would risk conflating distinct legal theories, confusing the issues, and delaying resolution of this properly filed securities fraud case. Moreover, transferring the case to the Northern District of Illinois would not eliminate the potential for duplicative pretrial discovery. Regardless of where the case proceeds, counsel can coordinate as needed to avoid unnecessary duplication, promote efficiency, and conserve judicial resources without the need to transfer the case.

---

[3] Although there is currently no operative complaint in the Antitrust Actions, certain of the complaints filed to date also include various state law antitrust claims that create subclasses for consumers who bought their frozen potato products in up to 35 different states—from Alabama to Wisconsin—and are thus subject to different state laws.

6

## ARGUMENT

### I.   This Action Does Not Meet the Standard for Transfer Under 28 U.S.C. § 1404(a)

Under Section 1404(a), "a district court *may* transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In deciding a motion to transfer pursuant to Section 1404(a), courts apply the eight-factor test set forth by the Ninth Circuit in *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 498 (9th Cir. 2000), which examines:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-99; *see also Rodgers v. Color Street LLC*, 2023 WL 4627909, at *4 (D. Idaho July 19, 2023) ("a court must balance the plaintiff's interest in choosing a forum against the aggregate considerations of convenience and fairness" under *Jones*).  None of the eight factors is dispositive. *Id*.  The decision to transfer a case to a different district court lies within the broad discretion of the district court on an individualized, case-by-case basis.  *Id*. at 498.[4]

The party seeking transfer bears the burden of showing that transfer is appropriate and warranted, including by "mak[ing] a ***strong showing*** of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F. 2d 834, 843

---

[4] Lamb Weston's Motion frames its Section 1404(a) argument around the three factors discussed in *Kitzler v. Nelnet Servicing, LLC*, 2022 WL 18284983 (C.D. Cal. Nov. 1, 2022), *i.e*., convenience of the parties, convenience of the witnesses, and interests of justice (*see* Motion at 5), but fails to acknowledge that *Kitzler*, along with nearly every court in this Circuit, applied the *Jones* factors in conducting its transfer analysis. *See Kitzler*, 2022 WL 18284983, at *3 (applying *Jones* factors and transferring class action to the forum where defendant is headquartered).  In fact, nearly every decision within the Ninth Circuit cited in Lamb Weston's Motion applied the *Jones* factors in conducting the transfer analysis.  In any event, all factors, including those Lamb Weston addresses in its Motion, weigh definitively against transferring this Action out of this District.

7

(9th Cir. 1986) (affirming trial court order denying motion to transfer action from Montana to Northern District of Illinois where claims arose from business operating in Montana).  As explained below, Lamb Weston has failed to meet its burden of showing transfer to the Northern District of Illinois is warranted.

### A. Lamb Weston Failed to Establish That Venue is Appropriate in the Northern District of Illinois

Under Section 1391(b), venue is proper only in "a judicial district in which any defendant resides" or "in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(1), (2).  Lamb Weston does not (and cannot) contest that venue is proper in this District because Lamb Weston is headquartered here and the operative facts giving rise to this Action occurred in this District and not the Northern District of Illinois.  That Lamb Weston may "have business operations" in the Northern District of Illinois (*see* Motion at 6, n.4) does not, standing alone, establish that venue for the Action is proper there.[5]

### B. The Convenience of the Parties and Witnesses, the Interests of Justice, and the *Jones* Factors Weigh in Favor of Denying Transfer

Lamb Weston has also failed show that the convenience of parties and witnesses or the interests of justice support transfer, and the applicable *Jones* factors weigh strongly against transfer.  *See Jones*, 211 F. 3d at 498 (9th Cir. 2000).

---

[5] Lamb Weston's Motion also ignores the Individual Defendants named in this Action, who are represented by the same counsel who represent Lamb Weston but have not joined the Motion. Lamb Weston does not claim that either of these Individual Defendants reside in Illinois (they do not) or engaged in any conduct giving rise to claims in Illinois.  *See Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 WL 2247394, at *22 (C.D. Cal. May 9, 2013) (venue improper where movant failed to demonstrate that any defendant resided in the district or that a substantial part of the events occurred there).

### 1.    Plaintiffs' Choice of Forum and the Contacts with the Forum Strongly Support Denial of the Motion

The third, fourth, and fifth *Jones* factors—plaintiff's choice of forum, the respective parties' contacts with the forum, and the contacts relating to the plaintiff's cause of action in the chosen forum—strongly support denial of the motion to transfer venue.[6]

In evaluating a motion to transfer a securities fraud class action, "courts generally afford substantial weight to a plaintiff's choice of forum[.]" *General Ret. Sys. of City of Detroit v. Wells Fargo Mortg. Backed Sec. 2006-AR18 Trust*, 2009 WL 2137094, at *4 (N.D. Cal. July 16, 2009) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).  "[T]he intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum, and unless the balance of factors is strongly in favor of the defendants, ***the plaintiff's choice of forum should rarely be disturbed***." *Wells Fargo*, 2009 WL 2137094, at *4 (citing *Investor Prot. Corp. v. Vigman*, 764 F. 2d 1309, 1317 (9th Cir. 1985).  Under the permissive venue provision of the securities laws, "a plaintiff's choice is entitled to greater deference as a matter of law, even where that case is brought as a class action." *Wells Fargo*, 2009 WL 2137094, at *4.  Thus, even in cases where the factors are equally balanced, the plaintiff is entitled to its choice of venue.  *See Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 432 (S.D.N.Y. 2018) (denying defendants' motion to transfer venue even though the convenience of the witnesses weighed in favor of transfer).

---

[6] The first and second *Jones* factors are inapplicable here.  The first factor—where the relevant agreements were negotiated or executed—does not apply here because the claims in this case are not based on contracts or agreement but on Sections 10(b) and 20(a) of the Exchange Act, which provide a private right of action for material misrepresentations or omissions made in connection with the purchase or sale of a security. *See Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 2024 WL 2804084, at *2 (D. Ariz. May 31, 2024).  The second factor—the forum that is most familiar with the governing law—is also neutral because both the District of Idaho and the Northern District of Illinois are equally capable of applying the governing Exchange Act. *Id*.

Here, Lamb Weston argues that, because this is a class action, "Plaintiffs should be given very little deference in their choice of forum." Motion at 10. This argument has little support in law. As courts have repeatedly held, class actions are not automatically entitled to less deference, particularly where, as here, Plaintiffs' choice of forum is based on "the extent of relevant activity in the forum." *See Wells Fargo*, 2009 WL 2137094, at *4 (rejecting the argument that class action plaintiff's choice of forum "should not be 'afforded special weight'"). And the lone case Lamb Weston relies on, *Hawkins v. Gerber Prods. Co.*, afforded less deference to the plaintiff's choice of forum because the plaintiff chose to file her action in San Diego against a lead defendant headquartered in New Jersey. 924 F. Supp. 2d 1208, 1215-17 (S.D. Cal. 2013) ("the heart of the matter" lay at the defendant's headquarters, where the relevant marketing and manufacturing decisions were made).

Consistent with *Hawkins*, the operative facts in this case arise squarely from Lamb Weston's conduct in this District, where it is headquartered. Lamb Weston maintained its principal executive offices in the District of Idaho at all relevant times, continues to conduct substantial business here, and this District is where the specific acts of the alleged securities fraud occurred and where the misstatements and omissions were made. Amended Complaint at ¶22; *see Sea Ltd.*, 2024 WL 2804084, at *3 ("Securities-related misrepresentations or omissions are deemed to occur in the district where they are transmitted or withheld, not where they are received."). In addition to the misstatements and omissions at issue, much of the underlying conduct that Plaintiffs allege, including the insufficient training and testing, and many of the meetings wherein Defendants were warned of and disregarded the ERP implementation struggles, took place at Lamb Weston's headquarters here in the District of Idaho. *See generally* Amended Complaint.

10

These facts support denial of transfer under *Jones* factors three, four, and five, as Plaintiffs' choice of forum was based on legitimate considerations, including the Defendants' substantial contacts with the forum and the occurrence of key events in this District giving rise to Plaintiffs' claims. *See In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1079 (S.D. Cal. 2011) (giving deference to plaintiff's choice of forum even where only "some of the operative facts occurred in this district").[7] That Lamb Weston may have some unspecified "business operations located in the Chicagoland area" (*see* Motion at 10) does not outweigh its far more substantial ties to this District.

### 2. The District of Idaho is the Best Forum

*Jones* factors six, seven, and eight—which consider the relative costs of litigation in the two forums, the availability of compulsory process for unwilling non-party witnesses, and the ease of access to sources of proof—reflect the convenience of the witnesses and the parties and weigh heavily in favor of denial of the Motion. *See Sea Ltd.*, 2024 WL 2804084, at *3. Contrary to Lamb Weston's assertion that this Action and the Antitrust Actions are "related actions" involving "significant overlap between the factual allegations" (*see* Motion at 6), these are fundamentally distinct proceedings with different parties, claims, and legal issues. In fact, Lamb Weston is the only overlapping party, there are no common claims asserted in this Action and the Antitrust Actions, and a decision in one of the actions will have no res judicata effect on the other action. The party and nonparty witnesses relevant to each case may substantially differ, further undermining any argument that transfer would promote efficiency.

---

[7] Other cases relied upon by Lamb Weston likewise support denying the Motion. *See e.g., Fizer*, 2011 WL 6370028, at *2 (transferring to the forum where "the accident occurred" and where local law was likely to govern the dispute).

11

Because Lamb Weston is headquartered in the District of Idaho, a significant number of relevant witnesses and documents are located in this District.[8] These witnesses include one of the Individual Defendants—Lamb Weston's current CFO Bernadette Madarieta who works in and is likely domiciled in Idaho—as well as Lamb Weston employees, who also likely reside in this District where the alleged fraud occurred. Many of these witnesses have no relevance whatsoever to the Antitrust Actions. Requiring such party witnesses to appear for trial in the Northern District of Illinois would impose substantial inconvenience, while litigating in this District avoids unnecessary travel and logistical burdens. *See Callwood v. Phenix City*, 2016 WL 1122681, at *2 (M.D. Ala. Mar. 22, 2016) ("when looking at the convenience of witnesses, courts examine the distance between plaintiff's choice of forum and the defendants' suggested forum."). Lamb Weston has not made, nor could it, any showing that it would suffer any prejudice or inconvenience by having to litigate here, in its home District.

Moreover, the subpoena power for the Northern District of Illinois under Fed. R. Civ. P. 45(c)(1)(A)—which compels non-party attendance only "within 100 miles of where the person resides, is employed, or regularly transacts business"—would not reach many of these Idaho-based witnesses if the case were transferred and such witnesses are former employees or otherwise not deemed party representatives. *See Volman v. Sony BMG Music Entm't*, 2008 WL 11338007, at *2 (C.D. Cal. Aug. 15, 2008) (noting that the convenience of witnesses factor considers "witnesses outside the scope of the Court's subpoena power and the geographic location of any potential witnesses."). Thus, even if this Action were transferred to the Northern District of Illinois,

---

[8] Any argument that transferring this Action to the Northern District of Illinois would create document discovery efficiencies lacks merit, given that digital files are easily transmitted to litigants wherever they are located. *See Pizana v. SanMedica Int'l LLC*, 2020 WL 469336, at *5 (E.D. Cal. Jan. 29, 2020) (finding location of the sources of proof neutral because "advances in technology have made it easy for documents to be transferred to different locations.").

12

Plaintiffs would still be forced to seek judicial intervention from this Court to enforce compliance with discovery and trial testimony sought from the many Idaho-based non-parties who are beyond the reach of the Northern District of Illinois, including current and/or former Lamb Weston employees located in Idaho. Accordingly, even if Lamb Weston is inconvenienced by litigating in its home forum (and it is not), Plaintiffs will be far more prejudiced if this Action were transferred outside of this District, where most of the relevant witnesses who would be called to testify at trial are located.[9] Thus, transfer is inappropriate because it would, at most, "merely shift rather than eliminate the inconvenience" associated with litigating the claims. *See IDACORP, Inc. v. Am. Fiber Sys., Inc.*, 2012 WL 4139925, at *4 (D. Idaho Sept. 19, 2012).

Lamb Weston's cited authority supports the proposition that the location and convenience of the witnesses is the primary consideration in assessing transfer under Section 1404(a)*. See, e.g.*, *Galmi v. Teva Pharm. Indus.*, 2017 U.S. Dist. LEXIS 222966, at *7 (C.D. Cal. Apr. 3, 2017) ("convenience of w*itnesses* is 'probably the most important factor in deciding' whether to transfer a case") (citing *Filmline (Cross Country) Prods., Inc. v. United Artists Corp*., 865 F.2d 513, 520 (2d Cir. 1989)) (emphasis in original);[10] *Johansson v. Central Garden & Pet Co.*, 2010 WL 4977725, at *4 (N.D. Cal. Dec. 2, 2010) (noting that convenience of non-party witnesses "is often the most significant" factor in transferring a Northern District of California case to the District of New Jersey).

---

[9] Plaintiffs would also be prejudiced by the delay inherent in a transfer, as Defendants have filed their Motion to Dismiss and briefing is already underway, which transfer would unnecessarily disrupt and restart.

[10] In *Galmi,* where the defendant was based in Israel, with a U.S. subsidiary in Pennsylvania, the court transferred the case to Connecticut from the Central District of California because the defendants were already facing similar litigation in Connecticut brought by the U.S. Department of Justice and the Connecticut Attorney General, such that the "primary witnesses in these cases [we]re in Washington, D.C., and Connecticut." *Id*. at *5.

While Lamb Weston asserts that "transferring the action to the Northern District of Illinois would greatly benefit both party and nonparty witnesses" (Motion at 10), it fails to identify a single such witness who would benefit from having to travel from Boise to Chicago. *See Manchin v. PACS Group, Inc., et al.*, 2025 WL 1276569, at *10 (S.D.N.Y. May 1, 2025) ("the party seeking transfer must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover"). Lamb Weston's conclusory assertion that this Action and the Antitrust Action "will likely involve the same alleged 'co-conspirators' and witnesses" (*see* Motion at 10) does not shift this factor in its favor, particularly where the only common party is Lamb Weston and there are no overlapping legal claims.

Nor do Lamb Weston's speculative concerns about potential "duplication" of discovery[11] justify transfer when they can be efficiently addressed through counsel's cooperation, if and when any such issues arise. *See* Motion at 10-11; *see also Sony Electronics, Inc. v. Guardian Media Techs., Ltd.*, 2007 WL 3333113, at *3 (S.D. Cal. 2007) (denying motion to transfer and expressing confidence that "counsel can cooperate to coordinate discovery, such as depositions of expert witnesses, to minimize any duplicative discovery."). For these reasons, the *Jones* factors and interests of justice support maintaining this action in the District of Idaho.[12]

---

[11] That antitrust discovery "can be tremendously expensive and time-consuming" (*see* Motion at 6) has no bearing on this PSLRA action where discovery is automatically stayed pending resolution of the Motion to Dismiss. Thus, Lamb Weston's reliance on *In re Lithium Ion Batteries Antitrust Litig.*, 2013 WL 2237887, at *2 (N.D. Cal. May 21, 2013) is misplaced, as that court addressed and generally allowed pre-motion to dismiss discovery while denying other discovery that certain defendants had established would be particularly costly to review and produce.

[12] Lamb Weston's remaining cited authority all involve cases addressing identical or near identical claims, and none of those cases supports transfer of an Exchange Act investor case to a venue where a Sherman Act case is proceeding. *See Vehimax Int'l, LLC v. Jui Li Enter. Co., Ltd.*, 2010 WL 11527371, at *5 (C.D. Cal. Mar. 16, 2010) (transferring one antitrust action to forum where a "nearly identical" antitrust case asserting the same claims on behalf of the same nationwide class was pending); *Gupta v. Bonta*, 2021 WL 10366002, at *3 (C.D. Cal. Nov. 8, 2021) (addressing

### C. The First-to-File Rule Supports Denial of the Motion

The first-to-file rule is a discretionary doctrine that allows a court to transfer, stay, or dismiss a later-filed action "when cases involving substantially similar issues and parties are filed in different districts." *See Rodgers*, 2023 WL 4627909, at *6 (citing *In re Bozic*, 888 F. 3d 1048, 1051 (9th Cir. 2019)). The court that first acquired jurisdiction should try the case. *See Rodgers*, 2023 WL 4627909, at *6 (citing *Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1381 (S.D. Cal. 2014)). Courts consider three factors in determining whether to apply the first-to-file rule: (1) chronology of the actions; (2) similarity of the parties; and (3) similarity of the issues (the "*Youngevity*" factors"). *See Rodgers*, 2023 WL 4627909, at *6 (citing *Youngevity*, 42 F. Supp. 3d at 1381).

The first-to-file rule dictates denial of Lamb Weston's Motion because this Action was commenced more than five months before the earliest of the Antitrust Actions. Despite Lamb Weston's baseless contention, the filing of Plaintiffs' Amended Complaint did not reset the filing date for the purposes of the first-to-file analysis. *See Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 987 (N.D. Cal. 2011) ("A number of courts have held that the filing of a complaint triggers the first-filed rule, regardless of whether the plaintiff later amends the complaint."). This Court is the first that acquired jurisdiction of the Exchange Act claims and should try the case.

---

cases alleging a constitutional challenge to the exact same recently-enacted statute and transferring later filed action to the forum of the earlier filed case); *American Canine Found. v. Sun*, 2006 WL 2092614, at *3 (E.D. Cal. July 27, 2006) (transferring later filed action to the forum of the earlier filed case when "[b]oth involve the same California state statute and San Francisco ordinance and both seek a declaration that the laws are unconstitutional"); *McCullough v. World Wrestling Ent. Inc.*, 2015 WL 13835101, at *5 (C.D. Cal. July 10, 2015) (granting transfer pursuant to a contractual forum selection clause that each plaintiff signed); *Papaleo v. Cingular Wireless Corp.*, 2007 WL 1238713, at *2 (N.D. Cal. Apr. 26, 2007) (granting transfer of later filed action asserting identical claims on behalf of a putative class that "is entirely subsumed" in the class of the earlier filed action).

15

The primary decision cited by Lamb Weston, *Sousa v. Walmart, Inc.*, 2023 WL 5278662 (E.D. Cal. Aug. 16, 2023), does not support its position that "the crucial time for the purposes of the first-to-file rule" is when Plaintiffs filed the Amended Complaint (*see* Motion at 8). *Sousa* addressed two cases brought as class actions on behalf of Walmart employees challenging COVID-19 screening policies and procedures. *Id*. at *2-3.  The court applied the first-to-file rule only after the plaintiff in the earlier action amended its complaint "outside the scope of leave to amend granted previously by the Court" by asserting the same claims and theories of liability as the later-filed class action. *Id*. at 8.  Here, by contrast, Plaintiffs' Amended Complaint did not introduce any new causes of action—let alone Sherman Act claims being asserted by a different class with no overlap—and merely expanded upon the basis of the Exchange Act claims set forth in the original complaint.  To the extent the Amended Complaint references Lamb Weston's potential anticompetitive conduct, those allegations only establish that Defendants made false and misleading statements in connection with Plaintiffs' securities fraud claims.  Thus, this District had jurisdiction over Plaintiffs' Exchange Act claims well before any of the Antitrust Actions were filed, and the first *Youngevity* factor supports retaining venue in this District.

Even if this Action was the second-filed action, the first-to-file rule and remaining *Youngevity* factors still would not support transfer.  As described above, there is no substantial similarity of the parties here, where the only common party is Lamb Weston, and the putative classes are entirely different and with zero overlap. *Cf. Sousa*, 2023 WL 5278662, at *8 ("both this case and *Haro* seek to represent a class of non-exempt, hourly Walmart store employees who were subjected to COVID-19 screenings, the parties are substantially similar" and "the theory of liability… completely overlaps").

Courts routinely find that the presence of a single common defendant does not establish party similarity under the first-to-file rule. *See, e.g., Wilkie v. Gentiva Health Services, Inc.*, 2010 WL 3703060, at *3-4 (E.D. Cal. Sept. 16, 2010) (finding no substantial similarity of the parties despite the same corporate defendant and some potential class member overlap); *NWDC Resistance v. Immigration & Customs Enf.*, 2019 WL 12262490, at *3 (W.D. Wash. May 30, 2019 ("although defendants in both actions are the same, the dissimilarity of the plaintiffs weighs against applying the first-to-file rule."); *Prescott v. CVS Health Corp.*, 2017 WL 5756873, at *2 (W.D. Wash. Nov. 28, 2017) (declining to apply the rule despite overlapping defendants where the cases involved distinct classes of plaintiffs); *see also Jim v. CoreCivic of Tennessee, LLC*, 2021 WL 4990084, at *21 (D.N.M. Oct. 27, 2021) (same).

There is also no overlap—let alone a "substantial" overlap—of the legal issues presented. "[C]ourts may decline to apply the rule if the claims will require different legal analyses, even if the underlying allegations are substantially similar." *NWDC Resistance*, 2019 WL 12262490, at *4 (declining to apply the rule despite similar allegations and relief sought, because the claims "involve[d] a much larger swath of [defendant's] conduct"). Here, this Action asserts Exchange Act claims, while the Antitrust Actions assert Sherman Act claims. As discussed *supra* pp. 4-6, these legal theories involve entirely distinct statutory regimes, elements of proof, and factual predicates. *See Cedars-Sinai Med. Ctr. v. Shalala*, 125 F. 3d 765, 769 (9th Cir. 1997) ("Because these issues are distinct, the requirement of identity of the issues is not met, and the first-to-file rule is inapplicable"). Lamb Weston's reliance on *Rodgers* only reinforces that the first-to-file rule should not apply here. 2023 WL 4627909, at *6-7 (transferring later-filed action where both cases arose from the same fact pattern and involved substantially the same individual and corporate plaintiffs and defendants, and where both courts would have to determine the viability of the same

17

agreement signed by those parties, risking inconsistent rulings and duplicative litigation). Thus, all three *Youngevity* factors support declining to apply the first-to-file rule.

**II.     The Court Should Reject Lamb Weston's Alternative Requests to Coordinate Discovery in Illinois or Stay Antitrust Discovery**

Alternatively, Lamb Weston proposes that the Court begin structuring discovery in this case—which is currently subject to the mandatory discovery stay of the PSLRA—to address entirely speculative issues it believes might arise as this Action progresses in parallel with the Antitrust Actions. *See* Motion at 11-12. Lamb Weston fails to proffer any valid basis for its extraordinary requests that the Court either (a) mandate that ***all discovery*** in this case take place in Illinois, or (b) stay all discovery in this case relating to antitrust issues until the Antitrust Actions conclude. These suggestions attempt to sidestep the established procedures under the PSLRA and would inefficiently fragment proceedings that are best managed by this Court.

**A.     Coordination of Pretrial Proceeding in Illinois is Unnecessary and Premature**

This Court is fully capable of managing pretrial proceedings. As required by the PSLRA, all discovery in this action is automatically stayed during the pendency of a motion to dismiss, such that there is no discovery currently and none will occur until this Court decides Defendants' Motion to Dismiss. That renders Lamb Weston's request not only unsupported, but unripe at this stage of the litigation. If an issue arises, the discovery logistics can be revisited. *See Doe v. Tenet Healthcare Corp.*, 2024 WL 3088709, at *2 (E.D. Cal. June 21, 2024) (noting that any overlapping discovery issues can be efficiently managed by counsel if and when discovery proceeds).

Even setting that aside, transfer of the Action for coordination of all pretrial proceedings, including discovery, is not appropriate. Transfer of this action to the Northern District of Illinois for coordination is not needed and would fail to achieve any judicial or party efficiencies. Nor do

Defendants articulate any.[13]  As with the arguments it makes regarding transfer, Lamb Weston continues to ignore critical differences described *supra* pp. 4-6 between the securities fraud claims alleged here and the claims in the Antitrust Actions that undermine its efficiency arguments.  Thus, while there may be some factual overlap with the events giving rise to the Antitrust Actions, Lamb Weston is wrong that there are "common questions of . . . law" that could give rise to "inconsistent rulings." *See* Motion at 12.

In any event, the Court need not and should not decide any of these issues at the current juncture, while discovery is stayed.  If necessary, counsel in this Action can coordinate with the parties in the Northern District of Illinois to address any discovery issues that may arise.  *See Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York*, 2020 WL 4194729, at *14-15 (S.D.N.Y. July 21, 2020) (rejecting defendant's assertion that transfer would reduce discovery burdens where "the parties have already agreed to coordinate discovery in the cases…thereby minimizing the potential for significant duplication of efforts").  Lamb Weston's invitation that the Court address these issues through prospective rulings on discovery that has yet to even commence here has no valid basis and should not be accepted.

**B.      A Stay of Antitrust Discovery Would Unfairly Prejudice Plaintiffs and is Unwarranted Under the Circumstances**

Lamb Weston alternatively suggests staying "antitrust discovery" until the Antitrust Actions are resolved. *See* Motion at 12.  That request fares no better.  The PSLRA already provides for an automatic stay of discovery in this Action while the Motion to Dismiss is pending—so there is nothing currently to stay.  Once the Court denies Defendants' Motion to Dismiss, it can then

---

[13] Lamb Weston's reliance on *Comptroller of Currency v. Calhoun First Nat'l Bank*, 626 F. Supp 137 (D.D.C. 1985) is inapposite.  The court transferred the case to Georgia because the defendants were based there, most witnesses resided there, and the actions arose from the same investigation and shared the same factual predicate.  *Id*. at 141.

assess the appropriate scope and timing of discovery, including whether any efficiencies can be achieved with related proceedings.

There is no justification at this juncture for a categorical stay of relevant discovery based on proceedings in a separate forum, particularly when the factual overlap is limited and speculative. Indeed, in practical terms, much of the concerns Lamb Weston speculates may arise over "expensive and time-consuming litigation" (Motion at 12) if discovery here proceeds in parallel with the Antitrust Actions can be addressed simply by the Company re-producing documents to the extent any overlap exists. Coordination of such document discovery is not burdensome and would be the same even if this Action were transferred—Lamb Weston is not conceding that Plaintiffs here would be entitled to the same discovery as in the Antitrust Actions and vice versa. Similarly, while Lamb Weston raises the specter of "witnesses being pelted with multiple depositions" (Motion at 10), this concern is premature, speculative, and misplaced—to the extent that depositions overlap at all, this Court can order coordination to avoid unnecessarily burdening witnesses. Plaintiffs expect that many of the witnesses in this case will concern solely the ERP implementation and should have no role in the Antitrust Actions. None of these issues, which routinely arise with litigation involving similar events but alleging different legal claims, warrant the drastic relief Lamb Weston seeks, particularly at this juncture.

Lamb Weston's request, if granted, would effectively strip Plaintiffs of the benefits of their chosen forum and procedural autonomy. Plaintiffs should be permitted to pursue discovery on their claims without artificial delay or outsourcing.

## CONCLUSION

For the foregoing reasons, the Court should deny Lamb Weston's motion to transfer this case to the United District Court for the Northern District of Illinois and deny Lamb Weston's alternative requests to coordinate discovery or stay antitrust-related discovery.

Dated: May 19, 2025                    Respectfully submitted,

                                       */s/ Scott McKay*
                                       Scott McKay (ISB #4309)
                                       Nathan Pittman (ISB#9430)
                                       **NEVIN, BENJAMIN & MCKAY LLP**
                                       303 W. Bannock Street
                                       Boise, Idaho 83702
                                       Tel.: (208) 343-1000
                                       Fax: (208) 345-8274
                                       smckay@nbmlaw.com
                                       npittman@nbmlaw.com

                                       *Local Counsel for Lead Plaintiffs and the Class*

                                       Salvatore J. Graziano (*pro hac vice*)
                                       Jeroen van Kwawegen (*pro hac vice*)
                                       James A. Harrod (*pro hac vice*)
                                       Katherine Sinderson (*pro hac vice*)
                                       **BERNSTEIN LITOWITZ BERGER &**
                                       **GROSSMAN LLP**
                                       1251 Avenue of the Americas, 44th Floor
                                       New York, NY 10020
                                       Tel.: (212) 554-1903
                                       Fax: (212) 554-1444
                                       salvatore@blbglaw.com
                                       jeroen@blbglaw.com
                                       jim.harrod@blbglaw.com
                                       katiem@blbglaw.com

21

Karin E. Fisch (*pro hac vice*)
James S. Notis (*pro hac vice*)
Vincent J. Pontrello (*pro hac vice*)
Cecilia E. Stein (*pro hac vice*)
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
kfisch@gelaw.com
jnotis@gelaw.com
vpontrello@gelaw.com
cstein@gelaw.com

*Counsel for Lead Plaintiffs and*
*Lead Counsel for the Class*

Frank R. Schirripa (*pro hac vice*)
Kathryn A. Hettler (*pro hac vice*)
**HACH ROSE SCHIRRIPA & CHEVERIE LLP**
112 Madison Avenue, 10th Floor
New York, NY 10016
Tel.: (212) 213-8311
Fax: (212) 779-0028
fschirripa@hrsclaw.com
kh@hrsclaw.com

*Counsel for Plaintiff Cleveland Bakers and*
*Teamsters Pension Fund*

22

CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system.  Copies of the document will be served on all counsel of record automatically by operation of the Court's CM/ECF filing system.

/s/ Scott McKay
Scott McKay