Lynnette M. Davis (ISB #5263)
Tyler J. Anderson (ISB #6632)
**HAWLEY TROXELL**
877 W. Main Street, Suite 200
Boise, ID 83702
Telephone:  (208) 344-6000
Facsimile:  (208) 954-5213
ldavis@hawleytroxell.com
tanderson@hawleytroxell.com
*Attorneys for Defendants Lamb Weston*
*Holdings, Inc., Thomas P. Werner,*
*and Bernadette M. Madarieta*
[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| OFI INVEST ASSET MANAGEMENT, ON BEHALF OF OFI INVEST ACTIONS AMERIQUE, and OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> LAMB WESTON HOLDINGS, INC., THOMAS P. WERNER, and BERNADETTE M. MADARIETA, <br><br> Defendants. | Case No. 1:24-cv-00282-DCN |

**DEFENDANT LAMB WESTON HOLDINGS, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

03601.0024.4900-3926-2281.1

**TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................2

    I.    The 28 U.S.C. § 1404(a) Factors Favor Transferring This Action to Illinois .............................................................................................................2

        A.    The Northern District of Illinois Is a Proper Venue for this Action ............................................................................................2

        B.    The Factors Described in § 1404(a) Favor Transfer to the Northern District of Illinois ...............................................................3

                1.    The Interests of Justice Strongly Favor Transfer ...................4

                2.    The Convenience of the Parties Favors Transfer ...................6

                3.    The Convenience of the Witnesses Favors Transfer ..............8

    II.    This Action Should Alternatively Be Coordinated for Discovery or Stayed ...........................................................................................................9

CONCLUSION ...........................................................................................................10

03601.0024.4900-3926-2281.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AES Corp. Sec. Litig.*,
  240 F. Supp. 2d 557 (E.D. Va. 2003) ................................................................ 3

*Amazon.com v. Cendant Corp.*,
  404 F. Supp. 2d 1256 (W.D. Wash. 2005).......................................................... 4

*Blackman v. Park West Galleries, Inc.*,
  2009 WL 1174639 (W.D. Wash. Apr. 29, 2009)............................................... 10

*Comptroller of Currency v. Calhoun First Nat'l Bank*,
  626 F. Supp. 137 (D.D.C. 1985) ...................................................................... 10

*Fanning v. Capco Contractors, Inc.*,
  711 F. Supp. 2d 65 (D.D.C. 2010) ..................................................................... 9

*Galmi v. Teva Pharm. Indus.*,
  2017 U.S. Dist. LEXIS 222966 (C.D. Cal. Apr. 3, 2017) ................................. 8

*General Retirement Systems of City of Detroit v. Wells Fargo Mortgage
  Backed Securities*,
  2009 WL 2137094 (N.D. Cal. July 16, 2009)..................................................... 7

*Greenspan v. Qazi*,
  2024 WL 1461364 (9th Cir. Apr. 4, 2024) ....................................................... 10

*Hawkins v. Gerber Prods. Co.*,
  924 F. Supp. 2d 1208 (S.D. Cal. 2013)............................................................... 7

*Hogan v. Pilgrim's Pride Corp.*,
  2018 WL 1316979 (D. Colo. Mar. 14, 2018) .................................................. 5, 6

*Ithaco, Inc. v. Billingsley Instrumentation, Inc.*,
  1999 WL 504907 (N.D.N.Y. Jan. 14, 1999)....................................................... 9

*Jones v. GNC Franchising, Inc.*,
  211 F. 3d 495 (9th Cir. 2000) ......................................................................... 4, 8

*In re Lithium Ion Batteries Antitrust Litig.*,
  2013 WL 2237887 (N.D. Cal. May 21, 2013)..................................................... 5

*London and Hull Mar. Ins. Co. Ltd. v. Eagle Pac. Ins. Co.*,
  1996 WL 479013 (N.D. Cal. Aug. 14, 1996) ..................................................... 4

03601.0024.4900-3926-2281.1

*Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.*,
   2010 WL 347901 (E.D. Cal. Jan. 22, 2010) ..................................................... 1

*Reese v. Malone*,
   2008 WL 11342462 (C.D. Cal. June 19, 2008) ........................................................ 3

*Ret. Sys. v. Teleperformance SE*,
   2023 WL 8372378 (D. Idaho Dec. 4, 2023) ..........................................................7, 9

*Rodgers v. Color Street LLC*,
   No. 2:22-CV-00397 (D. Idaho July 19, 2023) ............................................................ 5

*SEC v. Zouvas*,
   2017 WL 3706750 (S.D. Cal. Feb. 7, 2017) .......................................................4, 7, 8

*Sousa v. Walmart, Inc.*,
   2023 WL 5278662 (E.D. Cal. Aug. 16, 2023) .......................................................5, 6

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ....................................................................................... 4

*Variscite, Inc. v. City of Los Angeles*,
   2023 WL 3493557 (C.D. Cal. Apr. 11, 2023) ........................................................ 6

*W. Watersheds Project v. Nat'l Park Serv.*,
   2021 WL 5828028 (D. Idaho Dec. 8, 2021) .........................................................1, 4

*In re Yahoo! Inc.*,
   2008 WL 707405 (C.D. Cal. Mar. 10, 2008) ............................................................ 7

**Statutes**

15 U.S.C. § 78aa............................................................................................... 3

28 U.S.C. § 1391(b)(2) ......................................................................................3

28 U.S.C. § 1404 ............................................................................................... 1

28 U.S.C. § 1404(a) ....................................................................................1, 2, 4

PSLRA...................................................................................................5, 10

**Other Authorities**

Fed R. Civ. P. 26................................................................................................. 10

iii

Plaintiffs' opposition brief never answers the key question: How are judicial efficiency and the interests of justice served by having two separate judges and courts manage the *same* antitrust discovery, decide the *same* antitrust legal and factual issues, and ensure the *same* witnesses and third parties are being treated fairly and consistently? Plaintiffs have no response.

Their entire opposition instead revolves around the premise that the Illinois antitrust cases "are distinct from this Action." Opp. 1. But that is false. By their own admission, Plaintiffs' securities claims are *dependent* and *predicated* on the antitrust allegations being true. Amend. Compl. at 1 ("This securities class action arises from Defendants' deception of investors regarding . . . inflated product prices based on unsustainable, anticompetitive practices, including coordinated price increases with 'competitors[.]'"). Simply put, if the antitrust conspiracy allegations fail (and they will), Plaintiffs' entire claim that Lamb Weston deceived its investors about "inflated product prices" will likewise fail. They are linked.

These related cases thus should be combined in one court—the Northern District of Illinois. And although Plaintiffs spend significant space arguing that the District of Idaho is a convenient forum for the securities case, they never even bother to address the critical factor under the § 1404 analysis—the interests of justice. That factor "is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way." *W. Watersheds Project v. Nat'l Park Serv.*, 2021 WL 5828028, at *5 (D. Idaho Dec. 8, 2021).

This is a textbook case for transfer under § 1404. A transfer is needed to consolidate these overlapping cases to avoid "the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *Med. Dev. Int'l  v. Cal. Dep't of Corr. & Rehab.*, 2010 WL 347901, at *3 (E.D. Cal. Jan. 22, 2010). Plaintiffs claim that a transfer "would fail to achieve any judicial or party efficiencies" (Opp. 18), but that tone-deaf argument ignores the obvious: *one* court manages all

1

antitrust discovery issues; *one* court ensures parties and third-parties are treated fairly; and *one* court takes the time to make antitrust rulings without running into an inconsistent ruling by a different judge. In short, two different courts should not tag team on the same antitrust issues. In the interests of justice, this case should be transferred to the Northern District of Illinois. [1]

## ARGUMENT

**I.     The 28 U.S.C. § 1404(a) Factors Favor Transferring This Action to Illinois**

Despite Plaintiffs' attempts to wish away the connection between this case and the Illinois antitrust actions, their Amended Complaint fundamentally changed the nature of this case. It now adopts and *relies* on the expansive antitrust conspiracy theory as a predicate for their securities claims. They are not "distinct" actions, as Plaintiffs claim. Opp. 1-2, 5-6, 11, 17. To the contrary, Plaintiffs' Amended Complaint *contains 61 paragraphs* and spans across *33 pages* referencing the antitrust allegations.[2] And of those, at least a dozen paragraphs either reference or parrot the same allegations from the *Redner's* antitrust complaint in Illinois.[3]

The antitrust and securities claims are now inextricably tied together. Transferring this case to the jurisdiction that is already in the throes of handling the consolidated antitrust matter will benefit the interests of justice, as well as the convenience of the parties and witnesses.

**A.     The Northern District of Illinois Is a Proper Venue for this Action**

Plaintiffs' initial quibble with venue is unavailing. As set forth in Lamb Weston's opening brief, the Northern District of Illinois is "a venue in which Lamb Weston does indeed have business

---

[1] At the very least, this Court should stay antitrust discovery pending the outcome of the Illinois cases.

[2] *See Amend. Compl.* at ¶¶ 1, 15-19, 145-62, 184-86, 191, 238-59, 270, 273, 276, 278, 282-83, 288, 291-94 (about 20% of factual allegations).

[3] Similarities with *Redner's Market* Complaint: ¶ 17 (*Redner's* ¶ 3); ¶ 18 (*Redner's* ¶ 5); ¶ 152 (*Redner's* ¶ 59); ¶ 153 (*Redner's* ¶¶ 70-78); ¶¶ 155-56 (*Redner's* ¶¶ 61-62); ¶ 162 (*Redner's* ¶¶ 84-114).

2

operations," satisfying the requisite contacts required for personal jurisdiction in the transferee forum.  Mot. 5-6 & n.4.  Even more striking, Plaintiffs' own client, the International Brotherhood of Teamsters Local No. 710 Pension Fund, is based in the Northern District of Illinois, and must have received Lamb Weston's allegedly false financial statements in that district *for the purposes of this litigation*.  Mot. 9 n.5.  Contrary to Plaintiffs' opposition brief, (Opp. 8), it is evident that "a substantial part of the events or omissions giving rise to the claim[s] occurred" in the Northern District of Illinois, thus establishing venue under 28 U.S.C. § 1391(b)(2).

And if that were not enough, venue is also proper in the Northern District of Illinois because the claims at issue are brought under the Exchange Act, which allows an action to be brought in the jurisdiction where "any act or transaction constituting the violation occurred" or where "the defendant is found or is an inhabitant or transacts business."  § 27 of the Exchange Act of 1934, 15 U.S.C. § 78aa.  Plaintiffs cannot debate that the Northern District of Illinois is a jurisdiction where acts constituting the alleged violation occurred, especially considering that one of Plaintiffs' clients is based in that judicial district.  This is more than sufficient to show venue is proper in the Northern District Illinois.  *Reese v. Malone*, 2008 WL 11342462, at *2 (C.D. Cal. June 19, 2008) (reasoning that a case under the Exchange Act could have been brought in the transferee jurisdiction because "[d]efendants disseminated via the media and SEC filings the allegedly fraudulent statements in . . . the [transferee venue]"); *see also In re AES Corp. Sec. Litig.*, 240 F. Supp. 2d 557, 562-63 (E.D. Va. 2003) ("[T]o establish venue under § 78aa defendants need only show that the allegedly false or misleading information was transmitted into the [venue]").

**B.    The Factors Described in § 1404(a) Favor Transfer to the Northern District of Illinois**

This case and the Illinois cases require coordination so Lamb Weston and two different courts can avoid litigating in two different venues to resolve the same (unfounded) allegations—

3

thus warranting the safeguards provided by the statute. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (Section 1404(a) "prevent[s] the waste of time, energy, and money and . . . protect[s] litigants, witnesses and the public against unnecessary inconvenience and expense." (citation and quotation omitted)). And while Plaintiffs wholly misconstrue Lamb Weston's application of the test articulated by the Ninth Circuit in *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495 (9th Cir. 2000), (Opp. 7 n.4), Plaintiffs ignore the fact that courts have significant discretion in determining how to address the *Jones* factors. *See, e.g.*, *SEC v. Zouvas*, 2017 WL 3706750, at *3 (S.D. Cal. Feb. 7, 2017) ("Th[e] Court has the broad discretion to address which of the non-exhaustive factors laid out in *Jones* apply based on the particular facts of the case."). Lamb Weston's opening brief indeed addresses the *Jones* factors throughout its analysis of the two factors at issue in § 1404(a): (1) the interests of justice, and (2) the convenience of the parties and witnesses.[4] Both factors strongly favor transfer of this case to the Northern District of Illinois.

### 1.    The Interests of Justice Strongly Favor Transfer

"The 'interests of justice' consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way." *W. Watersheds Project*, 2021 WL 5828028, at *5 (citation omitted); *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005) ("The interest of justice factor is the most important of all." (citation omitted)); *London and Hull Mar. Ins. Co. Ltd. v. Eagle Pac. Ins. Co.*, 1996 WL 479013, at *5 (N.D. Cal. Aug. 14, 1996) ("The most important factor to consider is the 'interests of justice.'" (citation omitted)). Here, the interests of justice strongly favor transfer to

---

[4] Lamb Weston agrees that the *Jones* factor relating to the location where the relevant agreements were negotiated and executed and the *Jones* factor relating to the state that is most familiar with the governing law are inapplicable.

4

Illinois because the antitrust allegations should be litigated in a single forum, thus avoiding duplication of efforts and inconsistent rulings, while preserving judicial resources.

Plaintiffs remarkably never even mention—let alone address—the interests of justice factor. They do not acknowledge this is a complex securities case that is predicated on defective antitrust allegations. *Hogan v. Pilgrim's Pride Corp.*, 2018 WL 1316979, at \*6-\*9 (D. Colo. Mar. 14, 2018) (dismissing securities case because plaintiff did not plead the facts of the underlying anticompetitive scheme with particularity as required by the heightened PSLRA pleading standard).  Nor do they bother to recognize the enormous expense and burden both the securities and antitrust cases will present.  *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2013 WL 2237887, at \*2 (N.D. Cal. May 21, 2013) ("Courts acknowledge that antitrust discovery can be enormously expensive and burdensome." (citation omitted)).

Plaintiffs instead contend that any discovery issues can simply be resolved through the cooperation of the parties or coordination by the Court. *See* Opp. 1, 14.  This is wishful thinking. But be that as it may, this Court has previously recognized, having multiple courts address the same issues will undermine the judicial process.  Ex. A, *Rodgers v. Color Street LLC*, No. 2:22-CV-00397, at 15 (D. Idaho July 19, 2023) (Nye, J.) (reasoning that having separate courts rule on the same issues could result in "inconsistent decisions . . . which would only bring more inconvenience, expense, and uncertainty to the judicial system and to the parties").  For this very reason, Lamb Weston should not be forced to untangle these antitrust allegations from the consolidated actions in the Northern District of Illinois, which is uniquely situated to do just that.

Moreover, as stated in its opening brief, transferring this case to Illinois is consistent with the first-to-file rule because the antitrust complaints in Illinois pre-dated Plaintiffs' Amended Complaint here (with the antitrust allegations). *Sousa v. Walmart, Inc.*, 2023 WL 5278662 (E.D.

5

03601.0024.4900-3926-2281.1

Cal. Aug. 16, 2023) (finding second-filed case was the "first to file" over previously filed wage and overtime claims that were amended). Plaintiffs' attempt to distinguish *Sousa* falls flat. In that case, the court addressed three of the exact same causes of action between the amended complaints, but which expanded upon the basis of those claims with newfound allegations—like the Plaintiffs undeniably did here. *See id.* (Dkt. Nos. 29, 67). Moreover, as discussed above, Plaintiffs' newly added antitrust allegations do not simply elaborate on their prior theory of securities liability— they fundamentally change the case. *See Hogan*, 2018 WL 1316979, at \*6-\*9.[5] Because Plaintiffs did not bring any allegations regarding anticompetitive activity until filing the Amended Complaint, which occurred several months after the first antitrust cases were filed in Illinois, this Court does not have first-in-time jurisdiction over the antitrust allegations. Transfer is thus in accord with the first-to-file rule.

At bottom, without transfer, the risk of duplication and inconsistent rulings is significant. Given the complexity and size (as well as anticipated duration) of the Illinois antitrust cases, it would be improper to subject them to the rulings from a standalone securities matter. Transferring this action would invariably enhance the interests of justice because litigating these overlapping cases in one forum will ensure that discovery is efficient and judicial resources are conserved.

### 2.    The Convenience of the Parties Favors Transfer

As previously discussed, a plaintiffs' choice of forum is entitled to less deference when the plaintiffs represent a class. *See* Mot. 10. Plaintiffs reject this principle as having "little support in

---

[5] Plaintiffs also argue that the first-to-file rule is otherwise inapplicable because the parties and issues are not substantially similar. While the parties and issues are admittedly not identical, the underlying antitrust allegations, ensure that the same interests are at play between the parties. *Variscite, Inc. v. City of Los Angeles*, 2023 WL 3493557, at \*11 (C.D. Cal. Apr. 11, 2023) ("Courts have found parties to be 'substantially similar' under the first-to-file rule if they represent the same interests." (citation and quotation omitted)).

03601.0024.4900-3926-2281.1

law"—which is wrong.   An abundance of authority, including in this District, upholds this principle, especially where, as here, the class plaintiffs chose a forum other than where they reside. *See e.g.*, *City of Warren Gen. Emps.' Ret. Sys. v. Teleperformance SE*, 2023 WL 8372378, at *3 (D. Idaho Dec. 4, 2023) ("In class action suits, the usual deference to a plaintiff's choice of forum is given less weight[,]" especially where the "plaintiff does not reside within its chosen district."); *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) (same).

Plaintiffs cite *General Ret. Sys. of City of Detroit v. Wells Fargo Mortg. Backed Secs.*, 2006-AR18 Tr., 2009 WL 2137094 (N.D. Cal. July 16, 2009), for the proposition that a plaintiff's choice of forum is entitled to greater weight in the context of a securities case, even if it is brought as a class action.  Opp. 9.  But *Wells Fargo* is not the applicable standard, where, as here, not a single class plaintiff resides in the chosen forum.  *In re Yahoo! Inc.*, 2008 WL 707405, at *7 (C.D. Cal. Mar. 10, 2008) ("The majority of decisions that have considered the securities acts' special venue provisions against the line of cases rejecting deference to the plaintiff's choice of forum in class and derivative actions hold that, where the class plaintiffs are not residents of the chosen forum, their chosen forum deserves no special treatment.").

Plaintiffs also argue that their choice of forum deserves deference because the forum is the site of the operative events.  Opp. 10.  But Plaintiffs ignore the fact that their sweeping antitrust conspiracy allegations implicate operative events across the country, including Illinois.  Said differently, because Plaintiffs amended their complaint to include allegations relating to a massive, nationwide antitrust conspiracy, multiple jurisdictions are now the sites of operative events.  *See Zouvas*, 2017 WL 3706750, at *4 (transferring securities case, despite plaintiff's choice of forum,

7

where it involves "multiple actors who were residing in a number of different states").[6]

Plaintiffs also argue that a transfer would prejudice the parties, or at least shift the burden, because of the access to evidence and cost of litigation. Opp. 13. But this concern is speculative at best. As one court rightly explained, "[t]he ease of access to evidence is not a prevailing factor in deciding venue as advances in technology have made it easy for documents to be transferred to different locations." *Zouvas*, 2017 WL 3706750, at \*6 (citation and quotations omitted).

In short, Plaintiffs' choice of forum deserves no special deference here. This factor strongly favors transfer.

### 3. The Convenience of the Witnesses Favors Transfer

The convenience of the witnesses also favors a transfer to Illinois because Lamb Weston has many executives in Chicago, as well as the Midwest more broadly, and witnesses will likely overlap with the Illinois antitrust cases. Plaintiffs argue that these cases are different, that relevant witnesses are in Idaho, and that many of the witnesses for the securities case have no relevance to the antitrust cases. Opp. 11-12. These proffered arguments fail at face value. Plaintiffs' concerted efforts to piggyback on the allegations from the antitrust cases ensure that all the cases will address similar legal and factual issues and will likely have a significant number of overlapping witnesses. Given the similarities, opportunities to enhance the convenience for witnesses abound. *See Galmi v. Teva Pharm. Indus.*, 2017 U.S. Dist. LEXIS 222966, at \*4, \*7 (C.D. Cal. Apr. 3, 2017) (transferring securities cases to a transferee jurisdiction that "[was] both the location of one of the non-party witnesses, and the venue for an antitrust lawsuit . . . related to these cases").

Plaintiffs also argue that the transfer would prejudice the parties because non-party

---

[6] For these reasons, the *Jones* factors relating the parties' contacts with the forum and the contacts related to the plaintiffs' causes of action in the forum way in favor of transfer.

witnesses would likely fall outside the Northern District of Illinois's subpoena power. Opp. 12-13. However, this risk is largely speculative because Plaintiffs have not identified a single non-party witness that would land in this category. *City of Warren*, 2023 WL 8372378, at \*4 ("[W]hile the convenience of non-party witnesses is considered when deciding whether [to] transfer venue, Plaintiffs have not actually identified any such witnesses, and the Court cannot refuse to transfer venue based on the speculative presence of potential, unnamed, non-party witnesses."); *see also Fanning v. Capco Contractors, Inc.*, 711 F. Supp. 2d 65, 70 (D.D.C. 2010) (noting that "the physical location of witnesses is less important when testimony may be taken by deposition"). And, more fundamentally, this issue is not dispositive. *See Ithaco, Inc. v. Billingsley Instrumentation, Inc.*, 1999 WL 504907, at \*2 (N.D.N.Y. Jan. 14, 1999) ("[T]he inability of a court to subpoena a witness is not dispositive in a motion to transfer venue." (citation omitted)). Finally, counsel for Lamb Weston in this matter also represents the company's former employees, so the risk of former employees being unavailable is minimal. Hence, the convenience of witnesses would be greatly enhanced by a transfer to the Northern District of Illinois.

## II.    This Action Should Alternatively Be Coordinated for Discovery or Stayed

If the Court does not transfer this matter, then discovery concerning the Amended Complaint should be coordinated and managed in Illinois or stayed until the Illinois antitrust actions are resolved. Of course, a transfer or discovery stay may be mooted if the Court grants Lamb Weston's current motion to dismiss or dismisses the antitrust allegations (*See* Dkt. No. 66).[7] But in the event any part of the Amended Complaint relating to the antitrust allegations survives the motion to dismiss, those issues should be transferred to Illinois or stayed because of the

---

[7] Lamb Weston does not dispute that this case is currently subject to a discovery stay of the PSLRA.

significant overlap. *See Comptroller of Currency v. Calhoun First Nat'l Bank*, 626 F. Supp. 137, 141 (D.D.C. 1985) ("[S]ince the same witnesses and documents will probably be important to all actions, it would save the time and energies of the witnesses, the parties, and the attorneys to have all the actions litigated in the same geographical area.").

Plaintiffs have no comeback to the judicial efficiencies a transfer or stay here will create. They instead vaguely allude to some "unfair[] prejudice" they may suffer (Opp. 19), but they never articulate what that prejudice is or what it means. Regardless, any slight prejudice plaintiffs may suffer would be far outweighed to the interests of justice served by a transfer or pause on antitrust discovery. *Blackman v. Park West Galleries, Inc.*, 2009 WL 1174639, at *1 (W.D. Wash. Apr. 29, 2009) (staying discovery because of "[c]oncerns regarding judicial efficiency and the possibility of conflicting rulings").[8]  In sum, this case should not be litigated in two different courts at the same time. Thus, if this case is not transferred in its entirety to Illinois or if Lamb Weston's motion to dismiss is not granted, then all discovery should be stayed pending the outcome of the Illinois antitrust cases or all pretrial proceedings (including any discovery) should be transferred to the Northern District of Illinois to be coordinated with the antitrust cases.

## CONCLUSION

For the foregoing reasons, Defendant Lamb Weston respectfully requests that the Court grant its motion to transfer this case to the United States District Court for the Northern District of Illinois, or, alternatively, either allow any antitrust discovery to proceed in Illinois or stay such discovery until the class-action lawsuits in Illinois are resolved.

---

[8] Courts have broad discretion over managing discovery and, contrary to Plaintiffs' assertion, nothing in this request seeks a departure from the current stay mandated by the PSLRA. *Greenspan v. Qazi*, 2024 WL 1461364 (9th Cir. Apr. 4, 2024) ("The PSLRA merely implements an automatic stay of discovery that may be lifted at the district court's discretion . . . just as Rule 26 gives the court discretion over the timing of discovery." (citation omitted)).

10

Dated: June 2, 2025

Respectfully Submitted,
LAMB WESTON HOLDINGS, INC.

*Lynnette M. Davis*

One of Its Attorneys
Lynnette M. Davis (ISB #5263)
Tyler J. Anderson (ISB #6632)
**HAWLEY TROXELL**
877 W. Main Street, Suite 200
Boise, ID 83702
Telephone: (208) 344-6000
Facsimile: (208) 954-5213
ldavis@hawleytroxell.com
tanderson@hawleytroxell.com

James F. Herbison (admitted *pro hac vice*)
Michael P. Mayer (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
JHerbison@winston.com
MMayer@winston.com

John Schreiber (admitted *pro hac vice*)
Jeffrey L. Steinfeld (admitted *pro hac vice*)
**WINSTON & STRAWN LLP**
333 S. Grand Ave.
Los Angeles, CA 90071
Telephone: (213) 615-1700
JSchreiber@winston.com
JLSteinfeld@winston.com

*Attorneys for Defendants Lamb Weston*
*Holdings, Inc., Thomas P. Werner, and*
*Bernadette M. Madarieta*

11

03601.0024.4900-3926-2281.1

**CERTIFICATE OF SERVICE**

I hereby certify that on this June 2, 2025, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF system. Copies of the document will be served on all counsel of record automatically by operation of the Court's CM/ECF filing system.

Lynnette M. Davis

12

03601.0024.4900-3926-2281.1