# Exhibit A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRACY RODGERS, an individual, and ROBERT MCCAULEY, an individual,<br><br>Plaintiffs,<br>v.<br><br>COLOR STREET LLC, a New Jersey limited liability company, FA YOUNG PARK, an individual, LISA R. SCHMITT, an individual, and ANGELA MARIE POLSGROVE, an individual,<br><br>Defendants. | Case No. 2:22-CV-00397-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiffs' Motion to Stay Arbitration or, in the Alternative, for Injunctive Relief (Dkt. 16), Defendants' Motion to Dismiss or Transfer Venue (Dkt. 17), and Plaintiffs' "Emergent Motion to Stay Arbitration" (Dkt. 27). Having reviewed the record and briefs, the Court finds that the facts and legal argument are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the Court will decide the Motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons set forth below, the Defendants' Motion to Dismiss or Transfer Venue is GRANTED, Plaintiffs' Motion to Stay Arbitration or, in the Alternative, for Injunctive Relief is DENIED as MOOT, and Plaintiffs' Emergent Motion to Stay

MEMORANDUM DECISION AND ORDER - 1

Arbitration is DENIED as MOOT.

## II. BACKGROUND

Defendant Color Street, LLC ("Color Steet") is a New Jersey company founded in 2017 by Defendant Fa Young Park. Dkt. 1, ¶ 4. Park is Color Street's sole owner and resides in Florida. *Id*. Defendant Lisa Schmidt is Color Street's Vice President of Field Development, and Defendant Angela Polsgrove is Color Street's Senior Director of Sales. *Id*. ¶¶ 5–6. Schmidt and Polsgrove reside in New York and Michigan, respectively. *Id*. Park, Schmidt, and Polsgrove are referred to collectively hereinafter as the "Individual Defendants."

Color Street specializes in beauty goods and sells consumer products, most notably fingernail strips, through a network of "Independent Stylists." *Id.* ¶¶ 11, 13. Color Street also sells its products through third party vendors such as Amazon. Dkt. 16-1, at 3.

Plaintiffs Tracy Rodgers and Robert McCauley (collectively "Plaintiffs") are married and live together in Coeur d'Alene, Idaho. Dkt. 16-1, at 3; Dkt. 16-6, at 2.[1] In April 2017, before Color Street publicly launched its products, Rodgers learned about Color Street and signed up to be an Independent Stylist. Dkt. 1, ¶ 15. To do this, Rodgers contends she went to a web page that contained fields for a name, address, phone number, and credit card information. *Id*. ¶ 16. Rodgers alleges she did not execute or otherwise agree to any contracts or other written or verbal agreements and did not "click" any electronic boxes

---

[1] The Court notes—when finalizing this decision—Defendants provided the Court with a Declaration with exhibits highly suggesting that Plaintiffs will soon be or are no longer living in Idaho. Dkt. 28. The Court observed Exhibit D of the Declaration and Rodgers states that she and McCauley are selling their home in Coeur d'Alene and will be traveling the United States in a RV. *Id*., Ex. D at 11:56 (for eleven minutes and fifty-six seconds). This new information does not impact the Court's final outcome.

MEMORANDUM DECISION AND ORDER - 2

agreeing to any terms or conditions in order to become an Independent Stylist. *Id*. ¶ 17. By contrast, Color Street maintains that prior to being authorized to resell its products, every Independent Stylist must assent to Color Street's Independent Stylist Agreement ("ISA"), which contains a mandatory arbitration clause. Dkt. 17-1, at 2; Dkt. 17-7, ¶ 7.

In 2018, McCauley signed up to be an Independent Stylist with Color Street. Like Rodgers, McCauley alleges he did not execute, click, or otherwise agree to any contracts or other agreements with Color Street. Dkt. 1, ¶ 21. McCauley did not regularly engage in actively selling Color Street's products. *Id*. ¶ 22. However, Rodgers was a "high-ranking" Independent Stylist. Dkt. 17-1, at 3. She participated in many Color Street conferences, business meetings, and leadership meetings. *Id*. Rodgers's influence over other Color Street stylists was "tremendous" and she was one of the top earning stylists. *Id*.

In early 2022, the relationship between Rodgers and Color Street collapsed and Rodgers left the company. *Id*. At some point, Rodgers, McCauley, and two others launched their own competing company named "Audere." *Id*. Defendants contend Plaintiffs were still affiliated with Color Street at the inception of Audere. *Id*.

Beginning on approximately February 10, 2022, Color Street hosted its annual Leader Summit at the Grand Hyatt Baha Mar in Nassau, Bahamas ("2022 Leader Summit"). During the 2022 Leader Summit, Rodgers alleges the Individual Defendants defamed her by telling attendees that Rodgers had: (1) vowed to "take down Color Street"; (2) secretly filmed a negative, expose-style documentary about Color Street which would air on Netflix; (3) demanded money from Color Steet; and (4) threatened to recruit people away from Color Street. Dkt. 1, ¶¶ 42–44. On February 20, 2022, Color Street held a

MEMORANDUM DECISION AND ORDER - 3

Facebook live video during which Park allegedly made additional defamatory remarks against Rodgers. *Id*. ¶ 56. Rodgers contends the Facebook Live video was watched by Color Street Independent Stylists across the country. *Id*. ¶ 57. On February 24, 2022, Color Street purportedly held a Zoom call during which the Individual Defendants repeated the statements about Rodgers made during the 2022 Leader Summit and additional defamatory statements to attendee Independent Stylists across the country. *Id*. ¶¶ 59–71.

On February 28, 2022, Color Street commenced an arbitration action with the American Arbitration Association ("AAA") against Plaintiffs. *Id*. ¶ 77. Color Street alleged multiple claims against Plaintiffs, including breach of contract, breach of the implied covenant of good faith and fair dealing, misappropriation of confidential information, violation of the New Jersey Trade Secrets Act, unjust enrichment, tortious interference, independent contractor raiding, negligent misrepresentation, and unfair competition. *Id*. Color Street also sought injunctive relief. *Id*.

Plaintiffs allege Color Street's contends AAA has jurisdiction to arbitrate Color Steet's claims against Plaintiffs because they agreed to the terms of the ISA. *Id*. ¶ 78. Alternatively, Color Street apparently maintains Plaintiffs assented to Color Street's Policies and Procedures, which incorporate the terms of the ISA, and therefore the arbitration provision, by reference. *Id*. ¶ 79. Plaintiffs deny entering into an ISA and deny assenting to Color Street's Policies and Procedures.

Shortly after commencing the arbitration proceeding, Color Street also filed a Complaint for injunctive relief and other relief against Audere in New Jersey state court, which was later removed to the U.S. District Court for the District of New Jersey

MEMORANDUM DECISION AND ORDER - 4

(hereinafter "New Jersey case"). Dkt. 17-1, at 3–4. In addition to seeking injunctive relief against Audere, Color Street raises claims for tortious interference, independent contractor raiding, violation of the New Jersey Trade Secrets Act, misappropriation of confidential information, and unfair competition. *Id*. at 4.

In the arbitration action, Plaintiffs have repeatedly maintained that they are not subject to AAA's jurisdiction because they did not agree to the ISA and Color Street has not presented any evidence to the contrary. Dkt. 16-1, at 2; Dkt. 27-1, ¶ 38. Plaintiffs contend that, despite their requests, Color Street has failed and refused to provide documentation or other evidence that Plaintiffs executed or clicked the ISA, assented to waive their right to a jury trial, or otherwise agreed to arbitration. Dkt. 16-2, at 2.

On September 15, 2022, Plaintiffs filed the instant suit in this Court, seeking a declaratory judgment pursuant to Idaho law. Dkt. 1. Specifically, Plaintiffs contend they are entitled to a declaration that they are not bound by the terms of the ISA, and, more specifically, by the arbitration provision set forth in the ISA. *Id*. ¶ 95. Rodgers also brings claims against all Defendants for defamation and intentional interference with prospective economic activity ("tortious interference").  Dkt. 1, ¶¶ 14, 17.

On November 21, 2022, Plaintiffs filed a Motion to Stay Arbitration or, in the Alternative, for Injunctive Relief. Dkt. 16. On the same day, Defendants filed a Motion to Dismiss or Transfer Venue. Dkt. 17. On March 30, 2023, Plaintiffs filed an Emergent Motion to Stay Arbitration, seeking a temporary injunction of the arbitration proceedings pending the Court's ultimate determination as to whether Plaintiffs are subject to the ISA's arbitration provision. Dkt. 27.

MEMORANDUM DECISION AND ORDER - 5

## III. ANALYSIS

Because venue is a threshold issue the Court must address before turning to the merits of Plaintiffs' claims, the Court turns first to Defendants' Motion to Dismiss or Transfer Venue. *WildEarth v. Dep't of Justice*, 2013 WL 12539913, at *1 (D. Ariz. Aug. 12, 2014) (citing *Sinochem v. Malaysia*, 549 U.S. 422, 432 (2007)).[2]

### A. Motion to Dismiss or Transfer Venue (Dkt. 17)

#### 1. *Legal Standards*

Pursuant to 28 U.S.C. § 1391(b)(1), a civil action may be brought in a judicial district in which "any defendant resides, if all defendants are residents of the State in which the district is located." Under 28 U.S.C. § 1391(b)(2), a civil action may be brought in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." If there is no district in which an action may otherwise be brought as provided in the aforementioned provisions, then 28 U.S.C. § 1391(b)(3) provides a civil action may be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

The plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). If venue is improper, a defendant may assert a defense under Rule 12(b)(3) of the Federal Rules of Civil Procedure. When venue is improper, the court "shall dismiss, or if it be in the interest of

---

[2] Moreover, a "federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits,' and, thus, can decide a transfer motion before deciding jurisdiction because venue is not a determination on the merits, but a determination that the merits should be adjudicated elsewhere." *Core Litig. v. Appollo Glob. Mgmt., LLC*, 2017 WL 3045919, at *3 (C.D. Cal. Apr. 5, 2017) (quoting *Sinochem*, 549 U.S. at 430–32).

MEMORANDUM DECISION AND ORDER - 6

justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

A defendant may challenge a complaint for improper venue in accordance with Rule 12(b)(3) of the Federal Rules of Civil Procedure. "Plaintiff has the burden of proving that venue is proper in the district in which the suit was initiated." *Hope v. Otis Elevator Co.*, 389 F. Supp. 2d 1235, 1243 (E.D.Cal.2005); *see also Piedmont*, 598 F.2d at 496. When venue is challenged, in addition to the pleadings, the district court may consider facts outside of the pleadings. *Golden Scorpio Corp. v. Steel Horse B. & Grill*, 596 F. Supp. 2d 1282, 1286 (D. Ariz. 2009). When venue is improper "the case must be dismissed or transferred under § 1406(a)." *A. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). "The Court must construe all inferences in favor of the non-moving party when considering a Rule 12(b)(3) motion to dismiss." *Grubb v. BNSF Ry. Co.*, 2020 WL 5056578, at *2 (D. Mont. Aug. 27, 2020) (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).

Motions to transfer venue under § 1404(a) involve a two-step inquiry. First, a court must determine whether the proposed transferee court is one where the action might have been brought. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). Second, provided the case could have been brought in the transferee forum, a court must balance the plaintiff's interest in choosing a forum against the aggregate considerations of convenience and fairness. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

In striking the aforementioned balance, a court may consider the following non-

MEMORANDUM DECISION AND ORDER - 7

exhaustive list of factors: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Id*.

The moving party bears the burden of showing a transfer of venue is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Further, courts give "great weight" to a plaintiff's choice of forum. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). However, "the degree to which courts defer to a plaintiff's chosen venue is substantially reduced where the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (cleaned up).

2. *Dismissal*

Defendants argue that venue is improper because Plaintiffs do not provide enough support in their complaint to justify venue in the District of Idaho. Dkt. 17-1, at 6. Plaintiffs' only line in their complaint relating to venue is: "[v]enue is proper before this Court pursuant to 28 USC § 1391 and because the false and defamatory statements made by Defendants were made with the intent to harm and directed towards Rodgers, an Idaho resident." *Id*. at 3. In response to Defendants' Motion to Dismiss or Transfer Venue, Plaintiffs argue venue is proper under 28 U.S.C. §§ 1391(b)(2) and (3).

MEMORANDUM DECISION AND ORDER - 8

Plaintiffs bring claims for declaratory relief, defamation, and tortious interference with prospective economic activity, but the connections to Idaho for these claims are sparse with respect to venue. The Court notes 28 U.S.C. § 1391(b)(1) is not applicable because none of the Defendants are residents of Idaho. Therefore, the Court turns to 28 U.S.C. § 1391(b)(2). Only if § 1391(b)(2) does not grant venue in any district will the Court turn to § 1391(b)(3). *See Masterson v. Swan Range Log Homes, LLC*, 2007 WL 625387, at *2 (D. Idaho Feb. 23, 2007) ("[Section 1391(b)(3) was] intended as a fallback provision to be used only when venue does not lie under the previous two provisions.").

Pursuant to 28 U.S.C. § 1391(b)(2), a civil action may be brought in a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." Ninth Circuit case law holds that venue is proper under this subsection "in any district in which a substantial part of the acts, events, or omissions occurred that gave rise to the claim for relief." *Sutain v. Shapiro and Lieberman*, 678 F.2d 115, 117 (9th Cir. 1982) (cleaned up).

First, for Plaintiffs' declaratory judgment claim, they seek a declaration "that they are not bound by the terms of the ISA, and, specifically, the arbitration provision set forth in the ISA, directly or, indirectly, through the Policies and Procedures which references the ISA." Dkt. 1, ¶ 94. There are no explicit contract claims within Plaintiffs' complaint. However, the declaratory judgment claim is related to a contract claim because Plaintiffs seek a declaration that they are not bound by the terms of the ISA. Thus, the declaratory judgment claim sounds in contract. *See Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) ("A claim for declaratory judgment as to the existence of a contract is an action

MEMORANDUM DECISION AND ORDER - 9

sounding in contract."); *Stanford Ranch, Inc. v. Md. Cas. Co.*, 89 F.3d 618, 625 (9th Cir. 1996) ("[A] claim dependent on the existence of an underlying contract sounds in contract, as opposed to tort."); *see also Nu Image, Inc. v. Int'l All. of Theatrical Stage Emples.*, 893 F.3d 636, 648 n.7 (9th Cir. 2018) ("A suit for a declaratory judgment that a contract is unenforceable as a result of a fraudulent misrepresentation can be maintained as an action in contract.").

In order to find that venue in Idaho is proper with respect to Plaintiffs' declaratory judgment claim, the Court must determine where the business relationship between the parties started. The Ninth Circuit has held that "venue for a claim based on breach of contract be the place of intended performance rather than the place of repudiation." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986) ("We favor this rule because the place of performance is determined at the inception of the contract and therefore parties can anticipate where they may be sued."). Plaintiffs started to work for Color Street while living in Washington. Dkt. 1, ¶ 90. Plaintiffs later moved to Idaho, but the relationship between the parties already existed before Plaintiffs moved. *Id*. Since the relationship between the parties began simultaneously in Washington and New Jersey, a substantial part of the events did not occur in Idaho with respect to Plaintiffs' declaratory judgment claim. While venue would be proper in either Washington or New Jersey because performance began in those two jurisdictions, venue is improper in Idaho.

Second, Plaintiffs' defamation and tortious interference claims are based on Color Street's February 19, 2022 Facebook live video and a February 24, 2022 Zoom call. Dkt. 1, ¶¶ 56–61. The statements made in the Facebook video and the Zoom call were allegedly

MEMORANDUM DECISION AND ORDER - 10

made by the Individual Defendants and were purportedly disseminated to Color Street's nationwide network of Independent Stylists. *Id.*, ¶¶ 57–71.

The Ninth Circuit has ruled that when determining where a substantial part of the events or omissions giving rise to the claim occurred "in a tort action, the locus of the injury [is] a relevant factor." *Myers v. Bennett L. Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001). In *Myers*, at least one of the torts suffered by the plaintiffs were felt in Nevada, which the court held was adequate to make Nevada the proper venue. *Id*. In *Fiore v. Walden*, the Ninth Circuit held that because all of the economic injuries suffered by plaintiffs were realized in Nevada, including their loss of use and interest on seized funds, a "substantial part of the events or omissions giving rise to the claim occurred" in Nevada. 688 F.3d 558, 588 (9th Cir. 2012).[3]

Here, Plaintiffs assert that that Rodgers was damaged by the defamatory statements and suffered economic injuries.[4] Dkt. 1, ¶¶ 113–123. While the Court has limited information about the specific damages Rodgers incurred, it must make reasonable inferences in favor of the Plaintiffs at this stage of the proceedings. *See Masterson*, 2007 WL 625387, at *2. Thus, the Court assumes Rodgers felt the harm of the allegedly defamatory statements in Idaho, where she was residing when the statements were made in 2022. This would mean that a substantial part of the acts, events, or omissions that gave

---

[3] The United States Supreme Court reversed *Fiore* on jurisdictional grounds, but did not decide "whether venue was proper in Nevada." *Walden v. Fiore*, 571 U.S. 277, 282 n.5 (2014).
[4] Plaintiffs state that Defendants' claims resulted in economic injuries in the form of lost "network marketing contacts" on social media. Dkt. 1, ¶ 123. Other economic damages the Court could identify appear to be speculative such as lost public speaking engagements and vague descriptions of Rodgers's business relationships being impacted. Dkt. 1, ¶¶ 113, 118–119.

MEMORANDUM DECISION AND ORDER - 11

rise to the defamation and tortious interference claims occurred in Idaho, and venue in Idaho is appropriate with respect to these claims pursuant to 18 U.S.C. § 1391(b)(2). However, when there are multiple parties and/or multiple claims in an action, a plaintiff must establish that venue is proper as to each defendant and as to each claim. *Piedmont*, 598 F.2d at 496. Because Plaintiffs have not established an Idaho venue is appropriate for their declaratory judgment claim, the Court has discretion to dismiss the case under Rule 12(b)(3) or transfer it in the interests of justice to an appropriate jurisdiction under 28 U.S.C. § 1406(a). *Multimin USA, Inc. v. Walco Internation, Inc.*, 2006 WL 1046964, at *2 (E.D. Cal. Apr. 11, 2006) (cleaned up).

The Court does not find it necessary to dismiss the case outright as Plaintiffs do not have any fatal errors in their complaint. *See Clark v. Busey*, 959 F.2d 808, 812 (9th Cir. 1992) ("Transfer is [] improper where the plaintiff fails to make a prima facie showing of a right to relief, because the interests of justice would not be served by transfer of such a case."). In *Lehrman v. New York State*, 2019 WL 13252671, at *1 (C.D. Cal. Sept. 3, 2019), the court held that the plaintiff's complaint was so deficient that it could not be remedied via amendment nor transfer. Here, the Court finds that Plaintiffs state viable claims outside of the venue issue, but the venue issue can be remedied via transfer.

Before addressing whether the case should be transferred, the Court turns next to the issue of whether the complaint should be dismissed or transferred pursuant to the "first-to-file rule."

### 3. First-to-File

The first-to-file rule is a judicially created doctrine of federal comity, applicable

when cases involving substantially similar issues and parties are filed in different districts. *In re Bozic*, 888 F.3d 1048, 1051 (9th Cir. 2018) (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982); *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss.*, 787 F.3d 1237, 1239 (9th Cir. 2015)). Under the rule, a court with jurisdiction over the second-in-time action has discretion to transfer, stay, or dismiss the action in the interest of judicial economy and efficiency. *Id.* The court that first acquired jurisdiction should, in most instances, try the case. *Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1381 (S.D. Cal. 2014). Courts employ three factors to determine whether to apply the first-to-file rule: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues (hereinafter "*Youngevity* factors"). *Id.*

Here, it is undisputed that the New Jersey case was filed six months before the Idaho complaint. Thus, the first *Youngevity* factor is satisfied.

The second *Youngevity* factor is met when some of the parties in one matter are also parties to the other matter, "regardless of whether there are additional, unmatched parties in one or both matters." *Pac. Coast Breaker, Inc. v. Conn. Electric, Inc.*, 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011). When addressing similarity of the parties, "courts have held that the first-to-file rule does not require exact identity of the parties. Rather, the first-to-file rule requires only substantial similarity of parties." *Kohn*, 787 F.3d at 1240. In the New Jersey Case, the plaintiff is Color Street. The Individual Defendants in the instant case are officers of Color Street. Dkt. 1, ¶¶ 4–6. The defendants in the New Jersey case are Audere and Tony Ferraro, a third party. Dkt. 23, at 10. Rodgers and McCauley are high

MEMORANDUM DECISION AND ORDER - 13

ranking officers and owners of Audere. Dkt. 17-1, at 3, 10. Tony Ferraro formed Audere with Rodgers and McCauley. Dkt. 16-6, at 2.

The record is clear that the parties are substantially similar in this action and in the New Jersey case. Audere is run by Rodgers and McCauley, and Individual Defendants Fa Young Park, Lisa R. Schmitt, and Angela Marie Polsgrove are officers of Color Street. That Rodgers and McCauley are not parties to the New Jersey case does not shield them from the second *Youngevity* factor because they are the founding members of Audere and still run it to this day. *See Helix Elec., Inc. v. Grand View Pv Solar Two, LLC*, 2016 WL 3092157, at *3 (S.D. Cal. June 1, 2016) (holding that the parties were substantially similar in the two actions despite the absence of the parent company in the second-filed action). The fact Tony Ferraro is included in this action is immaterial because the parties need not be exactly the same. *Kohn*, 787 F.3d at 1240. Thus, the second *Youngevity* factor is satisfied.

The third *Youngevity* factor is met when the two lawsuits share similar issues. There must be "substantial similarity in the overlap of the claims and issues." *Youngevity*, 42 F. Supp. 3d at 1383. The issues between the cases do not have to be identical "so long as the actions involve closely related questions or common subject matter." *Centocor, Inc. v. MedImmune, Inc.*, 2002 WL 31465299, at *3 (N.D. Cal. Oct. 22, 2002). In the New Jersey case, Color Street raises claims including tortious interference, misappropriation of confidential information, and unfair competition stemming from Plaintiffs' alleged violation of the ISA. Plaintiff's declaratory judgment claim directly relates to the issues of the New Jersey case because Plaintiffs ask this Court to rule that they are not bound by the

MEMORANDUM DECISION AND ORDER - 14

terms of the ISA. Like Color Street's claims in the New Jersey case against Audere—Plaintiffs' company—Plaintiffs' other two tort claims in the instant case also stem from the parties' ill-fated business relationship. The issues in the two lawsuits are substantially similar because both cases arise from the same fact pattern and between the same individuals. Moreover, both the court in the New Jersey case and this Court would have to determine the viability of the ISA in order to assess the claims in each suit. This Court and the New Jersey court could thus issue inconsistent decisions on the viability of the ISA, which would only bring more inconvenience, expense, and uncertainty to the judicial system and to the parties. Thus, the third *Youngevity* factor is satisfied.

The first-to-file rule does apply, but as stated above, the Court believes an outright dismissal of Plaintiffs' claims is inappropriate. A transfer would be the Court's preference, but before doing so, the Court must assess the transfer factors outlined in *Jones*, 211 F.3d at 498–99.

### 3.. Transfer Factors

Transfer is appropriate in this case because New Jersey is the proper forum to try Plaintiffs' claims. In so holding, the Court relies on the eight transfer factors from *Jones*: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Id*. Defendants have the burden

MEMORANDUM DECISION AND ORDER - 15

of persuading the Court to transfer venue. *Savage*, 611 F.2d at 279.

a. Location where relevant agreements were negotiated and executed

The first factor, the location where the relevant agreements were negotiated and executed, weighs in favor of transfer. As noted, whether or not Plaintiffs assented to the ISA is irrelevant here because the business relationship between the parties began in Washington and New Jersey. *See* Dkt. 1, ¶¶ 88–89. Idaho was not the forum where the agreements were negotiated and executed, thus the first factor weighs in favor of transfer.

b. The state most familiar with the governing law

The second factor, the state that is most familiar with the governing law, is neutral. This factor is "generally given little weight because this Court, like all federal courts, is fully capable of applying another State's substantive law." *United Prod. & Tech. Ltd. v. Above Edge, LLC*, 2021 WL 4815956, at \*2 (C.D. Cal. June 3, 2021). This Court and the New Jersey court are equally equipped to handle the law of either state, thus this factor is neutral.

c. Plaintiffs' choice of forum and the contacts with the forum

The third, fourth, and fifth factors—Plaintiffs' choice of forum and the parties' contacts with the forum—are also neutral. While Defendants must make a "strong showing of inconvenience" to justify disturbing Plaintiffs' choice of forum, *Decker*, 805 F.2d at 843, Plaintiffs' choice of forum is given minimal consideration because the operative facts did not occur in Idaho. *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice

MEMORANDUM DECISION AND ORDER - 16

is entitled only to minimal consideration.").

Here, the declaratory judgment claim relates to contacts that occurred in Washington and New Jersey, whereas the other two tort claims relate to conduct purportedly directed at Idaho. The operative facts in this case are thus split between venues: Idaho, Washington, and New Jersey. The two tort claims involve contacts felt in Idaho, *see Fiore v. Walden*, 657 F.3d at 859, but that does not mean that Plaintiffs' choice of forum should be given substantial weight. The declaratory judgment claim involves substantial contacts with New Jersey and very little contacts with Idaho, so the deference given to Plaintiffs on these factors will not be substantial. Altogether, the balance of these factors is even for both parties. Thus, the third, fourth, and fifth factors remain neutral.

d. Differences in the costs of litigation in the two forums

The sixth factor, the differences in the costs of litigation in the two forums, also weighs in favor of Defendants. Defendants argue that due to the pending actions in New Jersey, costs would be saved as litigating in one forum would be more efficient for the parties. Dkt. 17-1, at 17. Further, the parties would not need to hire new local counsel, as most of the proceedings have occurred on Zoom in the New Jersey proceedings. *Id*. The Court finds these reasons persuasive. Plaintiffs assume, ". . . maintaining the instant action in Idaho, which is likely to have a less burdensome docket based on population, would enable the parties to litigate this matter more swiftly and save on attorney fees. . .." Dkt. 23, at 17. Despite the Plaintiffs' assumption, this Court is buried with over 500 pending civil and criminal case. Even with the recently appointed second active district judge, Idaho's federal docket is stacked, and the Court still expects delays in issuing decisions.

MEMORANDUM DECISION AND ORDER - 17

Moreover, litigating almost identical claims in two different forums could potentially subject the parties to disparate rulings and double the costs of litigation. The Court finds it would be more efficient for the parties and the judicial system to hear these claims in New Jersey. Thus, the sixth factor weighs in favor of transfer.

e. Availability of compulsory process to compel attendance of non-party witnesses

Convenience of non-party witnesses is an important factor in a court's analysis for transfer. *See Denver & R. G. W. R. Co. v. Bhd. of R. R. Trainmen*, 387 U.S. 556, 560 (1967) ("[V]enue is primarily a matter of convenience of litigants and witnesses"); *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F.Supp.2d 1109, 1132 (C.D. Cal. 2009) ("The convenience of witnesses is often the most important factor in determining whether a transfer under § 1404 is appropriate"). However, less weight is given to this factor when there is inconvenience to party witnesses. *Allstar*, 666 F. Supp. 2d at 1132 (C.D. Cal. 2009). This is because employees and partners of a company are more motivated to testify, and the company can compel them to testify. *Id.* (citing *Worldwide Fin. LLP v. Kopko*, 2004 WL 771219, at *3 (S.D. Ind. Mar. 18, 2004); *Hartfield v. Offshore Oil Services, Inc.,* 2006 WL 2670984, *6 (S.D. Tex. Sept. 14, 2006)).

To establish inconvenience of witnesses, "the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007). Here, the only witnesses that Defendants describe are "[v]arious vendors, current or former employees, and others, many within 100 miles of New Jersey, may therefore be witnesses in this action and subject to the federal subpoena power." Dkt. 17-1, at 17. Defendants

MEMORANDUM DECISION AND ORDER - 18

reference non-party and party witnesses but do not identify specific individuals. Plaintiffs do not list specific witnesses either. Dkt. 23, at 19. Because the information on witnesses is sparse, this factor remains neutral.

f. Ease of Access to Sources of Proof

Finally, the eighth factor, the ease of access to sources of proof, is also neutral. Defendants state that they "anticipate significant non-digital documentary evidence" to be used in the case but offer no clear examples. Dkt. 17-1, at 17–18. Plaintiffs also fail to offer any specific information with respect to this factor. *See* Dkt. 23, at 20–21. Thus, this factor remains neutral.

## V. CONCLUSION

In sum, two of the *Jones* factors weigh in favor of transfer, six remain neutral, and none weigh against transfer. Although the *Jones'* factors do not weigh heavily in favor of transfer, the Court finds transfer is within the interests of justice given such factors, as well as the first-to-file rule, and the significance of the declaratory judgment claim and its close relation to the New Jersey case. Thus, Defendants' Motion to Dismiss or Transfer Venue is GRANTED, and this case is transferred to the District of New Jersey. Given this holding, Plaintiffs' Motion to Stay Arbitration or, in the Alternative, for Injunctive Relief is DENIED as MOOT, and Plaintiffs' Emergent Motion to Stay Arbitration is DENIED as MOOT.

## VI. ORDER

**IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss or Transfer Venue (Dkt. 17) is **GRANTED; the**

MEMORANDUM DECISION AND ORDER - 19

**Clerk of the Court shall transfer this case to the District of New Jersey**.

2. Plaintiffs' Motion to Stay Arbitration or, in the Alternative, for Injunctive Relief (Dkt. 16) is **DENIED** as **MOOT**.

3. Plaintiffs' Emergent Motion to Stay Arbitration (Dkt. 27) is **DENIED** as **MOOT**.

DATED: July 18, 2023

David C. Nye
Chief U.S. District Court Judge